Following oral proceedings, the trial court divorced the parties and, pursuant to § 30-2-52, Ala. Code 1975, awarded the wife the lump sum of $507,500 as a property settlement and alimony in gross. The court also awarded the wife an attorney's fee in the amount of $27,250. The husband appeals. We affirm. *Page 286 
Section 30-2-52 permits a trial court, upon a finding of misconduct by one spouse, to make an allowance to the other spouse out of the estate of the offending spouse, as the circumstances may justify, provided "that any property acquired prior to the marriage of the parties or by inheritance or gift may not be considered in determining the amount." On appeal the husband contends that the effect of the lump sum award was to provide the wife with an interest in his prenuptial estate in violation of § 30-2-52. He maintains that he has no postnuptial estate from which to draw an award and that, consequently, he will be forced to liquidate prenuptial holdings and to use other protected assets in order to satisfy the judgment.
We note at the outset that when evidence is presented ore tenus to the trial court, as in this divorce, the judgment of the trial court is presumed correct. Absent an abuse of discretion that is so unsupported by the evidence as to be plainly and palpably wrong, we must affirm. Brannon v. Brannon,477 So.2d 445 (Ala.Civ.App. 1985). Further, matters of property division and alimony rest soundly within the trial court's discretion and will not be disturbed on appeal except where such discretion was plainly and palpably abused. Alstonv. Alston, 555 So.2d 1128 (Ala.Civ.App. 1989).
The record reflects that the parties met in 1973, when the wife became affiliated as an agent with the husband's real estate brokerage business. The husband was married at the time, and the wife was divorced from her first husband. A romantic relationship ensued, and in 1976 the husband obtained a divorce from his first wife. The parties married in November 1978. They were separated in November 1989 and divorced in April 1991, after approximately 12 years of marriage. At the time of the divorce the husband was 44 years of age and the wife was 56. Their marriage produced no children. The wife had two children from her previous marriage, and the husband had one child, a daughter, from his prior marriage. The husband's daughter resided with the parties during the last four and one-half years of their marriage. The wife insists that she was the child's primary caretaker during this period.
The husband procured a brokerage and real estate license in January 1969, and he has operated a real estate business as a sole proprietorship since shortly thereafter. In 1973 he incorporated the business. He presently is the sole shareholder. Both before and during the parties' marriage, the wife was affiliated with the husband's business as an independent contractor/agent. She was not an employee of the corporation, nor did she own any interest in it. By all accounts, the wife has been an aggressive and highly successful real estate professional. Evidence adduced at trial indicated that she was the leading agent during much of her association with the husband's business, for which she received considerable remuneration in the form of sales and listing commissions.
The record reveals that the parties' marriage was beset with extreme unpleasantness. In the pleadings and at trial, each party placed blame for the breakup of the marriage on the other. The husband claimed that the wife was verbally abusive, argumentative, and vindictive and that she interfered with the operation of his business both during the marriage and after the parties' separation. The wife claimed that the husband had a violent temper, had been physically abusive during the marriage, had been dishonest in his handling of the parties' finances, and had engaged in numerous extramarital affairs. At trial she specifically alleged that the husband had, without her consent, misapplied a number of her real estate commission checks for his personal use and had attempted to misappropriate certain life insurance proceeds of which she was the sole intended beneficiary. The husband denies that he has ever been dishonest in handling the wife's money or that he has engaged in adultery, although he admits to having engaged in sexual activity with a woman not his wife on three occasions.
The trial court made no specific finding of adultery, granting the divorce on *Page 287 
grounds of incompatibility of temperament and irretrievable breakdown. However, in the judgment of divorce the court recognized the husband's sexual infidelities and made specific findings of his marital misconduct and financial dishonesty toward the wife and other parties. We have thoroughly reviewed the record and conclude that there is ample evidence to support the trial court's finding of marital misconduct by the husband. A detailed recital of the testimony as to this issue would serve no useful purpose. We must emphasize that in cases such as this, the trial court's opportunity to observe the parties and witnesses is crucial. It is an opportunity we are not afforded. The credibility of oral testimony is consigned to the trier of fact. We will not substitute our judgment for that of the trial court. Cox v. Cox, 395 So.2d 1027 (Ala.Civ.App. 1981).
Where one spouse is guilty of misconduct toward the other spouse, the trial court's award may be as liberal as the estate of the offending spouse will permit under the circumstances of the case. Isom v. Isom, 273 Ala. 599, 143 So.2d 455 (1962). The determination of a spouse's separate estate is a matter for the trier of fact after reviewing all the evidence in each case.Alston, 555 So.2d 1128.
The trial court found as fact that "most of the marital estate is now reflected in real and personal property, accounts, and investments solely in the [husband's] name," but that the wife had contributed toward the growth of the husband's business and had made "significant" contributions toward the parties' postnuptial accretions in wealth and estate. The court further stated that it had been able to distinguish the husband's prenuptial estate from assets accumulated after the parties' marriage and held that the wife had no interest in the husband's prenuptial estate. A sizeable estate that the wife inherited from her parents was also excluded from consideration as part of the marital estate, the trial court rejecting the notion that the wife was entitled to "support" alimony under § 30-2-51, Ala. Code 1975.
At trial the husband placed the total value of his assets at approximately $900,000, nearly $240,000 of which, he said, is in retirement benefits and $35,000 of which is in the name of his minor daughter. He contends, however, that all assets he presently owns were held prior to the parties' marriage or were acquired with proceeds from the sale of assets he owned prior to the marriage. The record shows that he has substantial holdings in real estate that he purchased before the marriage and that during the marriage he continued to invest in apartment complexes and other properties. The husband asserts that, because of changes in the tax laws, his postnuptial real estate investments are worth considerably less than in previous years and that what postnuptial holdings he does have are in heavily mortgaged property. At trial he claimed to have a negative equity of $438,000 in the real property he acquired during the marriage. The evidence shows that the husband also has considerable stock investments; however, he maintains that these investments have significantly diminished in value in recent years. The parties stipulated at trial that the value of the husband's stock portfolio fell from over $1,300,000 to $1,000,000 within the last year.
The record indicates that during most of the parties' marriage, the husband's business was growing and operating at a substantial profit. However, the husband contends that the continued viability of the business is now threatened. He testified that his corporation operated at a loss in 1989 and 1990 and claimed that unless he can recruit more agents and increase sales, he will be forced to dissolve it. He also testified that his personal earnings have dropped in recent years. In 1990 his salary from the operation of his business was $24,000, down from $60,000 the previous year. He claimed that his total personal income for 1990 was $44,851.
While the wife does not dispute the husband's contentions regarding the current condition of his business, she takes exception to his assertions regarding his financial holdings and the size of the marital estate. The record indicates that just prior *Page 288 
to the initiation of the divorce action in November 1989, the husband, seeking to have his corporation franchised by the Prudential Life Insurance Company, prepared and provided Prudential with a financial statement, in which he valued the assets titled in his name at $2,723,247. At trial the husband testified that he did not dispose of any of his assets between the time he prepared the statement and the time he later estimated his assets to be worth some $1,800,000 less. However, he explained that this vast discrepancy was due to his own inadvertent accounting errors made when preparing the statement. He also testified that he had neglected to include on the statement an indebtedness of over $1,000,000 on apartment property he acquired in 1986.
The husband further testified that, prior to the marriage, he had a specific agreement with the wife that there would be no merging of assets when the parties married. He asserted that the wife kept nearly all her real estate commissions as her separate estate. The record reveals that the parties each had an individual savings account and shared three joint savings accounts: one of which was a shared travel account, one of which was a shared household account, and one of which, the husband claims, was used to hold money for investments. The husband contends that the parties kept all their property separate before and after the marriage, that the wife paid her debts out of her earned commissions, and that he paid his debts out of his commissions. He also stated that the wife never directly put money into his real estate investments and never paid the mortgages on any of the property that he owned.
The wife, however, disputed much of the husband's testimony regarding the parties' finances. She testified that there was no prenuptial agreement to keep the parties' estates separate and that, in fact, during the first seven years of the marriage she allowed the husband to handle her commission checks. She further indicated that she did not believe the husband had deposited all these checks in her individual account as he had claimed. She maintained that the parties' finances were handled separately only after 1985, following an incident in which she suspected the husband of misappropriating proceeds from an insurance policy. She also questioned the husband's account of his handling of one of the joint savings accounts during the marriage, into and out of which approximately $200,000 had been deposited and withdrawn, primarily by the husband. The husband maintains that all but $12,000 of this amount was his money alone. However, the wife indicated that her funds accounted for substantially more than that amount.
As the husband has correctly stated in his brief, § 30-2-52
proscribes a trial court from making an allowance to one spouse from the prenuptial estate of the other spouse. However, we disagree with the husband's contention that the trial court erroneously invaded the husband's prenuptial holdings when making its award to the wife. An examination of the record reveals ample evidence to support the court's findings as regards the husband's assets. The court had before it conflicting valuations of these assets. Importantly, the inconsistent and contradictory valuations were prepared by the husband. A comparison of his different valuations of just three of the real estate holdings acquired during the parties' marriage — one set of valuations made before the initiation of the divorce action in the Prudential statement and one set of (lower) valuations vouched for by the husband at trial — discloses a difference of over $300,000 in the husband's estimated postnuptial estate. Furthermore, the husband testified that in the Prudential statement he left out his indebtedness on an apartment complex purchased jointly with another party in 1986. He stated that this indebtedness substantially reduced the size of his estate. When estimating his net worth, the husband credits himself for only one half of the market value of this property, while maintaining that he is indebted for the full mortgage balance on the property. By doing so, the husband has effectively "decreased" his estimated net worth by well over $500,000. *Page 289 
The record supports the trial court's finding that the husband's assets increased significantly during the years that the parties were married. While no direct evidence of the husband's net worth at the precise date of the marriage was presented at trial, the record reveals that his assets approximated $250,000 only two years before the parties' marriage. The court was free to consider the conflicting evidence on the value of the husband's postnuptial assets and to assess the credibility of the husband's explanations for his different valuations. Cox, 395 So.2d 1027. We find that the court could have determined the husband's postnuptial estate to be substantially larger than that attested to by the husband at trial and that there was evidence before the trial court that this estate was large enough to support the court's lump-sum award.
An award of alimony in gross is intended to effect a final termination of property rights and is an approximation of the present value of one spouse's future support requirements and compensation for the loss of any inchoate property rights in her spouse's estate. Whether the separate estate of one spouse should be taken into consideration in determining alimony in gross is particularly within the discretion of the trial court.Cliett v. Cliett, 564 So.2d 997 (Ala.Civ.App. 1990). A property division does not have to be equal, but must only be equitable under the circumstances of each case. Alston,555 So.2d 1128. Factors that the trial court should consider in dividing marital property include the following: the source of the property acquired during the marriage, the parties' current financial circumstances, their future prospects, their ages and health, the length of their marriage, and their conduct with reference to the cause of the divorce. Grimsley v. Grimsley,545 So.2d 75 (Ala.Civ.App. 1989).
Inasmuch as the trial court made a specific finding of marital misconduct by the husband and premised the lump-sum award on § 30-2-52, we cannot say that it was an abuse of the court's discretion to make the allowance out of the husband's postnuptial estate. This is especially so in light of the fact that the court also found, from the evidence presented at trial, that the wife's public relations efforts in recruiting prospective clients fostered the growth of the husband's business and significantly increased the size of his estate after the marriage. There was testimony indicating that the wife's contacts and friendships with various executives of the General Motors Company in Saginaw, Michigan, enabled her to learn of impending employee transfers to the Morgan County area and to take advantage of these opportunities to her and her husband's mutual benefit. Furthermore, the court's finding of financial misconduct by the husband could have been premised on the court's belief, based on testimony by the wife, that the husband had used the wife's own earnings, without her knowledge, in order to increase his equity in property acquired both before and during the parties' marriage. The record clearly shows that the husband's equities in the real estate he acquired before the marriage increased substantially during the marriage.
We have carefully reviewed the entire record and conclude that the lump-sum award of $507,500 did not constitute an abuse of discretion by the trial court.
The husband also contends on appeal that the court abused its discretion in awarding the wife an attorney's fee in the amount of $27,250. As to this contention, he first argues that an award of an attorney's fee is inappropriate in view of evidence of the wife's substantial personal income and estate and in view of certain actions by the wife — which the husband has alleged to be "misconduct."
The allowance of an attorney's fee in divorce cases is within the sound discretion of the trial court. An award of such fees will not be set aside except where the trial court's discretion is plainly and palpably abused. Goree v. Dark, 550 So.2d 436
(Ala.Civ.App. 1989). A trial court should consider the following criteria in setting an attorney's fee: (1) the results of the litigation; (2) the nature of the conduct of the parties; (3) the financial circumstances *Page 290 
of the parties; and (4) the earning capacities of the parties.Id.
As was the case regarding the lump-sum award, the husband continues to assert that he does not have liquid assets sufficient to satisfy the award of fees. However, the trial court was in a position to assess the merits of the husband's arguments and made specific findings as to the size of the parties' estates and the parties' conduct with reference to the dissolution of the marriage. The court did not accept the husband's contentions with regard to his assets, and the only reference to misconduct in the court's judgment was to that of the husband.
The husband further argues that the trial court erroneously credited the wife's attorney with more than 90 extra hours of work on the wife's case, awarding a fee for over 250 billable hours, when the evidence, the husband says, indicated that the wife's attorney spent approximately 155 hours on the case. However, an examination of the relevant portions of the record reveals that the wife's attorney testified that he had worked for 155.05 hours prior to the trial's reconvening on its third of five days. Thus, in addition to the time established by this testimony, the wife's attorney apparently spent additional time in trial preparation and court attendance for the final three days of the trial. While the cause was under submission, the wife's attorney also filed an answer and counterpetition in response to a petition by the husband seeking injunctive relief. The trial court was in a position to adjudge the number of hours the wife's attorney spent on the case after the date on which he testified that he had worked for 155.05 hours.
The husband finally argues that the trial court abused its discretion by awarding the attorney's fee based apparently on an hourly rate of $100, when the wife and her attorney testified that their arrangement was for billing at the rate of $75 per hour. However, our supreme court has allowed awards of attorney fees at higher than agreed-upon rates where such awards are "reasonable." Lanier v. Moore-Handley, Inc.,575 So.2d 83 (Ala. 1991). The reasonableness of an attorney's fee is largely within the discretion of the trial court. Peebles v.Miley, 439 So.2d 137 (Ala. 1983).
The amount of attorneys fees awarded is also a matter within the trial court's discretion and will not be reversed except for clear abuse of that discretion. Goree, 550 So.2d 436. The trial court's intimate knowledge of the case especially advantaged it to make a correct determination of the value of the legal services of the wife's attorney. Based on our review of the entire record, we do not find the award of an attorney's fee in the amount of $27,250 in the instant case to be unreasonable or an abuse of discretion.
The judgment of the trial court is due to be affirmed.
The wife's request for an attorney's fee on appeal is granted in the amount of $2,500. The husband's request for an attorney's fee on appeal is denied.
AFFIRMED.
ROBERTSON, PJ., and THIGPEN, J., concur.