THOMAS, Judge.
Ernest Kreitzberg (“the husband”) appeals from a judgment of the Baldwin Circuit Court divorcing him from Myra Kreitzberg (“the wife”) that, among other things, awarded the wife alimony and divided the marital property between the parties. The wife cross-appeals from the trial court’s judgment divorcing the parties. With respect to the appeal, we affirm in part, reverse in part, and remand with instructions. With respect to the cross-appeal, we affirm.

Facts and Procedural History

After nearly 35 years of marriage, the husband filed a complaint for a divorce in the trial court on July 9, 2009, claiming incompatibility of temperament and an irretrievable breakdown of the marriage.[1] The wife answered the complaint and counterclaimed for a divorce on September 23, 2009. In her counterclaim, the wife alleged that the husband had physically *927 and emotionally abused her during the course of the marriage. On March 9, 2010, the husband amended his complaint for a divorce to include an allegation that the wife had physically and emotionally abused him during the course of the marriage. The wife answered the amended complaint and denied the allegations of abuse. The parties conducted discovery.
On October 6 and 18, 2010, the trial court conducted a trial regarding the husband’s divorce complaint and the wife’s counterclaim for a divorce. The husband and the wife were the only witnesses to testify during the two-day trial.
The husband testified at trial that he had received an inheritance from both his mother and his aunt. Specifically, he testified that he had inherited 2,484 shares of ExxonMobil Corporation stock from his mother after her death on January 30, 1997. He stated that those shares of stock had been transferred into his name alone. He further testified that a program called “Computer Share” manages the stock and that that program continually reinvests any dividend income that the stock produces. He stated that the wife’s name was never on his stock account with ExxonMo-bil.
In addition to the ExxonMobil stock, the husband testified that he had inherited $99,712 in cash from his mother. He stated that, upon receipt of the cash, he immediately had taken the money to the bank, had sent $8,000 of the money to the United States Treasury to pay taxes on the inheritance and had placed the remaining $91,712 into a certificate of deposit (“CD”). He testified that he had purchased that CD at the State Bank of Countryside in Countryside, Illinois. He further testified that the CD had been placed in his name only. The husband testified that he had continually reinvested the money in the CD, along with any investment income from the CD, in the form of a CD until 2005. He testified that in 2005 he had moved the CD from the State Bank of Countryside to AmSouth Bank (“Am-South”) in Fairhope and that the CD had remained in the form of a CD with Am-South from 2005 until 2008. The husband testified that the CD at AmSouth was placed in his name alone and that all the interest the CD accrued was immediately reinvested.
The husband testified that in 2008 he had withdrawn all the money in the CD, which had grown to $133,312.25, and had purchased ExxonMobil stock with it. He also stated that any dividend income derived from the stock was immediately reinvested.
Other than the stocks and cash, the husband also testified that he had inherited $23,000 in United States savings bonds from his mother. He stated that that money was held in the form of savings bonds in his name until 2005, when he redeemed the savings bonds at AmSouth. The husband testified that, after he redeemed the savings bonds, he placed the money into a money-market account held jointly in his and the wife’s names. He stated that' he had placed the money in the joint money-market account in order to pay taxes on the investment income his inherited money and stocks had generated because the couple filed joint tax returns.
The husband also testified that he had inherited assets from his aunt. He testified that she had died in 2008, that he had inherited a total of $87,000 from her estate, and that he had received the money in two separate payments — $60,000 as an initial payment and another $27,000 as the final payment. The husband testified that he had deposited the $60,000 in an account he had opened in his name at Royal Bank of Canada (“RBC”). He testified that, after having placed the money in the RBC *928 account, he immediately wrote a check for the entire $60,000 to ExxonMobil to purchase 827 shares of stock. He testified that all dividend income derived from that stock was automatically reinvested.
The husband testified that he had received the final payment of $27,000 in October 2009. He stated that he had placed that money in a personal checking account at RBC in his name and that he had then transferred that money to ExxonMobil to purchase additional shares of stock. He further stated that all the dividend income from that stock was automatically reinvested. He testified that he had never sold any of his ExxonMobil stock or withdrawn any money from his stock account with ExxonMobil.
The husband also testified that the dividend income from the ExxonMobil stock was listed on the parties’ joint tax returns. He stated that in some years the parties had a tax liability upon which they paid taxes to the United States government. He testified that the total amount of taxes the parties had paid on the ExxonMobil dividends was $8,560 and that the total taxes they had paid after redeeming the savings bonds was $10,980. He further testified that the total taxes the parties had paid from 1997 until 2009 on any income derived from inherited assets was $32,253.
He testified that the assets of the marital estate included a 2003 Saturn automobile, a scooter, a rowboat with a motor worth approximately $1,000, a 1978 Catalina sailboat worth approximately $2,000-$3,000, and items of personal property. Additionally, he testified that the parties owned their home in Fairhope and that it did not have an outstanding mortgage on it. He opined that the value of the marital residence was $225,000. He stated that he had come to the $225,000 value by considering a large number of comparable homes that had been sold in the parties’ neighborhood.
The husband also testified that he had an individual retirement account (“IRA”) with a balance of around $36,000 at RBC and that the wife also had her own IRA and that the parties had a joint money-market account containing $210,000. He further testified that the parties had a joint checking account with a balance of approximately $1,300. He stated that the parties lived off of the money in the joint checking account. His testified that the joint checking account is funded by his Social Security benefits and his two retirement accounts. Specifically, he stated that he has a pension with JI Chase Company from which he receives approximately $363 per month and a pension with Allis Chal-mers Manufacturing Company from which he receives approximately $580 per month. Additionally, he stated that his Social Security check of $1,678 per month is also deposited into the account, while the wife’s Social Security check of approximately $598 is deposited into her own separate checking account.
The husband testified that he had withdrawn a total of $16,000 from the parties’ joint checking account to pay his attorneys throughout the divorce action. He stated that he did not expect the wife to pay for his attorney fees but that he felt the parties should split the cost of the attorney fees in the divorce action. He also asked the court to award each party 50% of the money-market account containing $210,000. Additionally, he stated that he would like the court to award each party 50% of the parties’ monthly joint income, which compromises his JI Chase pension, his Allis Chalmers pension, his Social Security check, and the wife’s Social Security check. This division would provide each party with roughly $1,600 per month. He also stated that he did not mind if the wife *929 was awarded the 2003 Saturn automobile but that he would like the parties’ Catalina sailboat, the scooter, and the rowboat.
The husband testified that he had never committed any act of domestic violence against the wife. However, he testified that the wife had committed acts of domestic violence against him on two separate occasions. He stated that the wife had thrown a plate that struck hri head, causing the police to be called, that resulted in the wife’s being arrested for domestic violence on July 4, 2009. He also testified that the wife had struck him in the eye while he was driving. He testified that he did not notify the police of this incident but that he did go to the hospital to seek medical attention as a result of the incident. He stated that the wife had called the police regarding the parties’ disagreements, but, he said, he had never been arrested.
The husband testified that the wife’s relationship with her daughter, Michelle Kainz, and Kainz’s grandchild had created problems in the marriage. He opined that Kainz does not like him and that she plots against him. He testified that he did allow the wife to have private telephone conversations with Kainz, but that he had told the wife that he preferred to be involved in any telephone conversations she had. He also stated that he was not trying to control the wife. He testified that he had requested that Kainz stop sending the wife pictures of Kainz’s granddaughter because the pictures upset the wife because they reminded her that she was not able to visit the child. The husband also testified that he did not shout obscenities at the wife or call her names.
The wife testified that the parties’ marriage had deteriorated over the years. She testified that the parties had serious marital problems, including verbal abuse, emotional abuse, and physical abuse. The wife stated that those problems had started in the 1980s but had gotten much more severe after the husband retired because the parties spent more time together. She testified that she had filed for a divorce in the mid-1980s because of an incident in which the husband had cornered her and threatened to kill her. She testified that the husband had threatened to kill her several other times, but, she said, he did not threaten to kill her every time they had a dispute. She testified that he would talk to her in a demeaning way and that he had threatened to burn down the parties’ home. She further testified that the husband would throw objects at her. Specifically, she testified that he had thrown a wooden stool, paints, and a dog bowl full of water, which had hit her in the back of the head. She also testified that the husband had hit her with a magazine and a remote control. She testified that he had spit in her face. She also stated that he had abused her approximately once a month from the year 2000 until the present.
The wife testified that she had thrown a plate at the husband on July 4, 2009, and that she had been arrested on a charge of domestic violence regarding that incident. She stated that the charges had been dropped and that she had thrown the plate in response to the husband’s constant emotional abuse. The wife testified that she had never struck the husband in the eye.
The wife testified that the husband had 11,626.992 shares of ExxonMobil stock with a value of approximately $758,000. She testified that the parties had paid taxes on the stock from their joint money-market account. However, she testified that the husband had placed only $23,000 of his inheritance in the parties’ joint money-market account and that he had kept the rest of the money and assets he had inherited separate. She stated that, other than the $23,000 deposited into the joint *930 money-market account, the husband’s inheritance had never been used for the common benefit of the parties.
The wife testified that the value of the marital residence was $247,000. She stated that she did not care to keep the marital residence but that she would like 50% of the parties’ equity in the house. She also testified that she wanted the trial court to order that the parties’ IRA accounts be equalized because her IRA contained about $31,000 while the husband’s IRA contained about $35,000. She also testified that she wanted her personal checking account, with a value of approximately $2,000, to be awarded entirely to her.
In regard to additional income, the wife testified that she had considered her monthly expenses following the divorce. She testified that her monthly living expenses would be $2,845.74, which included the cost of paying rent because she was not asking for the marital residence. The wife did not dispute the husband’s testimony regarding the parties’ monthly income, and she testified that the parties’ monthly income included about $300 from the husband’s JI Chase pension, about $500 from the Allis Chalmers pension, about $1,600 from the husband’s Social Security check, and about $600 from her Social Security check. She testified that she would like the trial court to split the parties’ monthly income evenly between the parties, which would give her approximately $1,600 per month. She further asked the trial court to award her $1,500 in monthly alimony in order to provide her with the additional money she would need in order to pay for all of her expenses following the divorce.
The wife further testified that she had had serious health issues throughout the marriage. She had had open-heart surgery in 2005 and in 2006. The wife also testified that she had had a stroke in 2006 and that she had had a plate placed in her foot in 2008. She further testified that she had had a hip replacement in 2007 and that she will most likely require another surgery on her foot in the future.
After considering the ore tenus testimony and the trial exhibits, the trial court entered a judgment on November 19, 2010, divorcing the parties on the grounds of incompatibility and physical and emotional abuse by the husband. Pursuant to its November 19, 2010, judgment, the trial court ordered the division of the martial assets as follows: (1) the husband was awarded 100% of the ExxonMobil stock; (2) the husband was awarded the marital residence, which the trial court found to have a fair market value of $247,000; (3) the wife was awarded 65% of the equity in the marital residence, and, accordingly, the husband was ordered to pay the wife $160,550; (4) the wife was awarded 50% of the value of the parties’ joint checking account plus an additional $8,000 as reimbursement for the $16,000 the husband had withdrawn from the joint account; (5) the wife was awarded the 2003 Saturn automobile; (6) the husband was awarded the parties’ Catalina sailboat, the scooter, the rowboat, and a trailer; (7) the wife was awarded 50% of the parties’ joint money-market account, plus an additional $5,000 as reimbursement for $10,000 the husband had withdrawn from the money-market account during trial; (8) the husband was ordered to pay the wife $757.69 in order to equalize the parties’ IRA accounts; (9) the wife was awarded periodic alimony in the amount of $2,500 per month; (10) the husband was ordered to pay the wife’s attorney fees in the amount of $14,625; and (11) the parties were awarded specific items of personal property.
On December 20, 2010, the husband filed a timely notice of appeal. The wife filed a cross-appeal on December 30, 2010.

*931
Issues

The husband argues three issues on appeal: (1) whether the trial court exceeded its discretion in its award of $2,500 in monthly periodic alimony to the wife in violation of § 30-2-51(a), Ala.Code 1975, (2) whether the trial court’s award of alimony violates § 30 — 2—51(b)(3), Ala.Code 1975, and (3) whether the trial court erred in awarding the wife sums from the husband’s retirement accounts because, he alleges, the wife failed to meet her burden of proving which retirement funds were acquired during the course of the marriage.
The wife raises one issue on cross-appeal: whether the trial court erred in finding that the assets inherited by the husband were not used regularly for the common benefit of the parties.

Standard of Review

“A divorce judgment that is based on evidence presented ore tenus is afforded a presumption of correctness. Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998). This presumption of correctness is based upon the trial court’s unique position to observe the parties and witnesses firsthand and to evaluate their demeanor and credibility. Brown, supra; Hall v. Mazzone, 486 So.2d 408 (Ala.1986). A judgment of the trial court based on its findings of facts will be reversed only where it is so unsupported by the evidence as to be plainly and palpably wrong. Brown, supra. However, there is no presumption of correctness in the trial court’s application of law to the facts. Gaston v. Ames, 514 So.2d 877 (Ala.1987).”
Robinson v. Robinson, 795 So.2d 729, 732-33 (Ala.Civ.App.2001).

Analysis

We will first consider the wife’s contention that the trial court erred in finding that the assets inherited by the husband were not used regularly for the common benefit of the parties’ marriage because it is a threshold issue to be determined before considering the husband’s arguments. The wife argues that the husband’s inheritance, specifically the Exxon-Mobil stock, was used for the common benefit of the marriage because, she says, the dividends from the stock were listed as income on the parties’ joint tax returns and the husband placed $23,000 of his inheritance in their joint money-market account in order to pay the parties’ taxes.
The trial court awarded the husband 100% of the ExxonMobil stock because it concluded that the stock was the husband’s separate property that had not been used for the common benefit of the marriage and was therefore not subject to division under Ala.Code 1975, § 30-2-51(a). Specifically, the trial court stated on the record:
“I don’t know that there would have been any way for [the husband] to do anything else to keep his inheritance separate in what he did. Based on that, I’m awarding him 100 percent of the [ExxonMobil] stock. After a 41-year marriage[2] ends like it does, that does not feel right, but that is what I believe the law requires me to do.”
Section 30-2-51 (a) provides:
“If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse’s family. Not *932 withstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage.”
The husband spent a considerable amount of time testifying as to exactly how he had invested and used the inheritance from both his mother and his aunt. Moreover, the wife’s testimony did not contradict the husband’s testimony regarding the issue of his inheritance. It was undisputed that the husband had cashed United States savings bonds worth $23,000 and had placed that amount of money into the parties’ joint money-market account to pay taxes but that all other inherited funds and assets had remained , in his name alone and that any investment income derived from those funds and assets had been automatically reinvested. Moreover, the wife specifically testified that, other than the $23,000 deposited into the joint money-market account, the husband had never used his inheritance to benefit the household.[3]
The wife relies upon Weichman v. Weichman, 628 So.2d 867 (Ala.Civ.App.1993), to bolster her claim that the trial court erred. In Weichman, this court affirmed a trial court’s judgment holding that a baseball-card collection was a marital asset and not part of the husband’s separate estate when evidence presented in the trial court established that the wife had contributed to the collection and that additions to the collection had been purchased with marital assets. However, in this case, the trial court concluded that the ExxonMobil stock was part of the husband’s separate estate, and there was no evidence indicating that any part of the stock had been sold for use by either party. Therefore, this case is unlike Weichman.
“The determination of a spouses’s separate estate is a matter for the trier of fact after reviewing all the evidence in each case.” Shirley v. Shirley, 600 So.2d 284, 287 (Ala.Civ.App.1992). In this case, the trial court heard a significant amount of testimony regarding the husband’s inheritance. Moreover, as noted above, the wife testified that, other than the $23,000 from the sale of the savings bonds, the husband’s inheritance had never been used to benefit the parties in any way. See Hull v. Hull, 887 So.2d 904, 908 (Ala.Civ.App.2003) (holding that the wife’s inheritance had not been used for the common benefit of the parties during the marriage when the evidence established that the wife had withdrawn only $10,000 from her inheritance on one occasion to remodel the kitchen). Therefore, based on the testimony, we cannot conclude that the trial court erred in finding that the husband’s inheritance, specifically the ExxonMobil stock, had not been used regularly for the common benefit of the parties during their marriage. Accordingly, we affirm the trial court’s judgment insofar as it awarded *933 100% of the ExxonMobil stock to the husband.
The husband contends that the trial court erred in awarding the wife $2,500 per month in periodic alimony because, he says, the award is excessive in light of his monthly income. Specifically, he argues that payment of the alimony award requires him to either liquidate his inheritance, which the trial court concluded was part of his separate estate, or give the wife more than 50% of his retirement benefits; thus, he claims that the trial court’s judgment awarding such a large alimony award indirectly did what § 30-2-51(a) and (b)(3) prohibit it from doing directly.
“[MJatters of alimony and property division rest soundly within the trial court’s discretion, and rulings on those matters will not be disturbed on appeal except for a plain and palpable abuse of discretion. Welch v. Welch, 636 So.2d 464 (Ala.Civ.App.1994). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues. Willing v. Willing, 655 So.2d 1064 (Ala.Civ.App.1995).”
Henderson v. Henderson, 800 So.2d 595, 597 (Ala.Civ.App.2000).
It is well established that
“[t]he purposes of alimony are to preserve, to the extent possible, the economic status of the parties that existed during the marriage and to provide support for the dependent former spouse. Kahn v. Kahn, 682 So.2d 1377, 1380 (Ala.Civ.App.1996); and O’Neal v. O’Neal, 678 So.2d 161, 165 (Ala.Civ.App.1996). An award of alimony and the division of marital property must be considered together and must be equitable. Ex parte Durbin, 818 So.2d [404] at 408 [ (Ala.2001) ]. The determination as to what is equitable lies within the sound discretion of the trial court. Id. Factors to be considered in determining an award of alimony and the division of property include the parties’ respective ages, earning capacities, and future prospects; the parties’ standard of living and stations in life; the length of the marriage; the conduct of the parties in regard to the cause of the divorce; and the source, value, and types of marital properties. Murray v. Murray, 598 So.2d 921 (Ala.Civ.App.1992); Rolls v. Rolls, 623 So.2d 744 (Ala.Civ.App.1993); Crowe v. Crowe, 602 So.2d 441, 443 (Aa.Civ.App.1992) (fault can be considered in dividing property, even if the divorce is not granted on the basis of fault).”
Carter v. Carter, 934 So.2d 406, 409 (Ala.Civ.App.2005). Additionally, we note that “[p]eriodic alimony is payable from the current earnings of the paying spouse.” Miller v. Miller, 47 So.3d 262, 265 (Ala.Civ.App.2009) (citing Bray v. Bray, 979 So.2d 798, 800 (Ala.Civ.App.2007)).
In this case, the parties are both retired and the evidence as to the amount of monthly income they receive was undisputed. It was also undisputed that the wife had had some serious medical issues. Further, the trial court divorced the parties on the grounds of incompatibility and physical and emotional abuse on the part of the husband; thus, the trial court concluded that the husband’s conduct was a major factor in regard to the cause of the divorce. Additionally, the wife presented evidence to the trial court indicating that her monthly expenses following the divorce would be approximately $2,845.74, which included the cost of paying rent. Therefore, we cannot conclude that the trial court erred in awarding periodic alimony to the wife. However, we will consider whether the award of periodic alimo *934 ny is excessive in light of the financial assets of the husband.
Specifically, the husband argues that the trial court erred in awarding the wife periodic alimony in the amount of $2,500 per month because, he says, he can only pay such an excessive alimony award by liquidating his inheritance or paying more than 50% of his retirement income to the wife. We note that a trial court may not use an award of alimony as a way to indirectly circumvent the provisions of § 30-2-51(a) and (b)(3). See, e.g., Murphy v. Murphy, 624 So.2d 620, 622-23 (Ala.Civ.App.1993) (reversing a trial court’s award of alimony in gross to the wife and holding that the “disposition was an effort to indirectly do what the existing law prohibits” when the only assets awarded to the husband that could be used to satisfy the award were two retirement accounts).
The parties agreed that the parties’ income was funded by the husband’s JI Chase pension, the husband’s Allis Chal-mers pension, and the parties’ Social Security checks, which are all retirement benefits. According to the husband’s testimony, which the wife did not dispute, the parties’ total monthly income was $3,219. However, the husband’s total monthly income without any contribution from the wife’s Social Security check was $2,621. Therefore, pursuant to § 30-2-51(b)(3),[4] the wife is entitled to a maximum of $1,310.50 per month from the husband’s monthly income. Accordingly, because the retirement income was the husband’s sole source of income[5] and because “[p]e-riodic alimony is payable from the current earnings of the paying spouse,” the maximum amount of periodic alimony the trial court could have awarded to the wife was $1,310.50 per month. Miller, 47 So.3d at 265. Therefore, we hold that the trial court erred in awarding the wife $2,500 per month in periodic alimony.
Accordingly, we reverse the trial court’s periodic-alimony award because the award violates § 30-2-51(b)(3). Additionally, because an award of alimony must be considered together with the division of marital property, see Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App.1995), we also reverse the judgment insofar as it divided the marital property. On remand, the trial court is instructed to adjust the alimony award and the property division as it considers appropriate in light of the parties’ retirement incomes and the fact that the ExxonMobil stock is an asset of the husband’s separate estate.
Lastly, the husband contends that the trial court erred in awarding the wife any sums from his retirement accounts because, he says, the wife failed to meet her burden of proving which retirement funds were acquired during the course of the marriage. It is a general rule that “the spouse seeking an award of *935 retirement benefits bears the burden of proving the amount of retirement benefits that were accumulated during the marriage.” Payne v. Payne, 48 So.3d 651, 654 (Ala.Civ.App.2010); see also § 30-2-51(b)(2), Ala. Code 1975 (“The court shall not include in the estate the value of any retirement benefits acquired prior to the marriage.... ”). However, in this case, we cannot address the husband’s argument on appeal because he failed to raise this issue before the trial court.
The trial court made no findings of fact relative to its award of retirement benefits; its judgment merely awards the wife periodic alimony in a specific amount and requires that the husband pay an additional $757.69 in order to equalize the IRA accounts between the parties. Thus, in order to preserve for review his challenge to the sufficiency of the evidence as to what retirement assets were acquired during the parties’ lengthy marriage, the husband was required to have argued that issue before the trial court or to have raised that issue in a postjudgment motion. See New Props., L.L.C. v. Stewart, 905 So.2d 797, 801-02 (Ala.2004) (“[I]n a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review.”); see also Powe v. Powe, 48 So.3d 635, 637 (Ala.Civ.App.2009) (refusing to address the husband’s argument that the wife had failed to prove the amount of his military-retirement benefits that had accrued during the parties’ marriage because the husband had failed to argue that issue in the trial court).
In this case, the husband did not argue that the wife had failed to prove what retirement assets had been acquired during the marriage at trial and he did not file a postjudgment motion. Therefore, we cannot address the husband’s argument that the wife failed to prove the amount of the husband’s retirement benefits that had accrued during the parties’ marriage. Accordingly, we affirm the trial court’s judgment insofar as it awarded the wife $757.69 of the husband’s IRA in order to equalize the parties’ IRA accounts.

Conclusion

To summarize our holdings with respect to the husband’s appeal, we affirm the judgment of the trial court insofar as it awards the wife a portion of the husband’s IRA to equalize the parties’ IRA accounts; we reverse the judgment of the trial court insofar as it awards the wife $2,500 in periodic alimony and divides the parties’ marital property; and we remand the cause to the trial court with instructions. With respect to the cross-appeal, we affirm the trial court’s judgment insofar as it holds that the husband’s inheritance is part of his separate estate and had not been used for the common benefit of the parties during the course of the marriage.
APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CROSS-APPEAL — AFFIRMED.
THOMPSON, P. J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. Although the parties married on December 30, 1974, it was undisputed that the parties had been cohabiting and living together as husband and wife since January 1969. However, the trial court made no findings regarding the issue of a common-law marriage. Thus, we consider the parties to have been married for nearly 35 years at the time the divorce proceedings were initiated.

. See, supra note 1.

. Her testimony was as follows:
"Q. [Husband’s counsel]: Other than $23,000 in bonds, did any of the cash that he inherited, stock he inherited was that ever used to benefit your household in any way?
"A. [Wife]: No, and isn't that a shame.
"Q. [Husband’s counsel]: Were the dividends generated from the stocks that he purchased from all of the inherited assets ever used for household expenses?
"A. [Wife]: Nope, just paid taxes on it.
"Q. [Husband’s counsel]: Were they ever used for the benefit of the family in any way?
"A. [Wife]: Nope.”

. Section 30-2-51(b)(3) provides:
"(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on die date the action for divorce is filed, provided that the following conditions are met:
[[Image here]]
[[Image here]]
"(3) The total amount of the retirement benefits payable to the non-covered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court.”

. There was some testimony at trial indicating that the husband had additional income in the form of dividends from the ExxonMobil stock, as evidenced by the parties joint tax returns. However, this income cannot be considered in the award of periodic alimony because the ExxonMobil stock was deemed to be part of the husband's separate estate. See § 30-2-51(a).