DONALDSON, Judge.
Landon Bentley (“the husband”) appeals from a judgment of the Jefferson Circuit Court (“the trial court”) divorcing him from Molly Bentley (“the wife”) insofar as it granted the wife sole legal and sole physical custody of the parties’ children and awarded the wife certain funds that the husband contends were his separate property. The wife cross-appeals from the judgment insofar as it imputes income to the wife for the purpose of determining the husband’s child-support obligation. For the reasons set forth below, we affirm the judgment.
*1167 Background
The husband and the wife were married in February 2001. Two children were born of the marriage. On March 18, 2014, the wife filed a complaint for a divorce in the trial court, citing incompatibility of temperament and an irretrievable breakdown of the marriage as grounds for the divorce. The wife requested sole legal and sole physical custody of the children. She also requested that the husband be required to pay child support. The husband filed an answer and a counterclaim, in which he requested that the parties be granted joint custody of the children and that the trial court refrain from including his inherited, nonmarital assets in the marital estate. The trial court held a trial on February 2, 2015, at which it received the testimony of the parties.
The trial court entered a judgment on February 17, 2015. In the judgment, as amended by an order entered on April 24, 2015, the trial court made the following determination pertaining to the custody of the parties’ children:
“4. ... [I]t is in the welfare and best interest of the minor children of the parties ... that the care and custody and control of the ... children be ... awarded as shared custody, with the primary residence being with the [wife].
“I. Shared parental responsibility (Joint Custody) for a minor child means that both parents retain full parental rights and responsibilities with respect to their children and requires both parents to confer so that major decisions affecting the welfare of the children will be determined jointly.
“II. Both [the wife and the husband] have expressed a desire to be involved in the various activities of their minor children. These include academic, religious, civic, cultural, athletic, medical and dental activities of the minor child[ren]. [The wife and the husband] shall consult with each other prior to initiating any such activity with the minor children. [The wife and the husband] shall cooperate with one another in adjusting their schedules to assure that the children are delivered to and returned [and] both parties will consult with one another regarding all such activities.... That [the wife and the husband] will notify one another as to any conferences, programs or events relating to such activities in such a way that both parties will have an opportunity to participate in such activities of the minor children.
“HI. Should [the wife and the husband] be unable to agree on any aspect of the academic, religious, civic, cultural, athletic or medical and dental, activities of the minor children, [the wife] is hereby designated as having the primary authority and responsibility regarding the involvement of the minor children in said activities. The exercise of this primary authority is in no way intended to negate the responsibility of the parties to notify and communicate with each other as set forth hereinabove.
“5. [The husband] shall have the right to custodial time with the minor children of the parties in accordance with the following PARENTING PLAN:
“A. The first, third, and every other fifth full weekends of each month beginning the first Friday following this decree from 6:00 p.m. on Friday until the following Monday when the children are returned to school. Should the children’s school be out due to a recognized Federal holiday, teacher work shop day or unused bad weather day, [the husband] shall return the children to school that following Tuesday. (First weekend is the *1168 first full weekend, of the month and if there is a fifth Friday of a month)”
(Capitalization in original).
The trial court also divided the parties’ marital property. In the property division, the trial court included the husband’s interest in the Bentley Family Partnership (“the partnership”), an entity created by the husband’s father as a vehicle for transferring assets to the husband and his two brothers. The pertinent portion of the trial court’s judgment provides:
“25. That [the wife] is awarded Three Hundred' Thousand Dollars ($300,000.00) from [the husband’s] one-third interest of the- Bentley Family Partnership which on the date of trial had an approximate value of One Million One Hundred Thirty Three-Thousand Dollars ($1,133,00.00). [The wife] is divested from any remaining interest in said account..,. ”
The husband, his two brothers, and their father were partners in the partnership. The husband’s interest in the partnership increased after the death of his father and one of his brothers. The husband testified that his father made all contributions to the partnership but that the partnership also earned income in the form of dividends and interest. The husband testified that the partnership income attributable to his share of the partnership had been reported on his and the wife’s joint tax returns. The husband testified that he and the wife had discussed utilizing his interest in the partnership as their .retirement fund in lieu of setting up other retirement accounts. The husband testified that he had never received any distributions of funds or assets from the partnership.
The trial court also ordered the husband to pay $819 in monthly child support. The trial court acknowledged that it had considered the Form CS-41 “Child-Support-Obligation Income Statements/Affidavit” (“CS-41. income affidavit”) submitted by each party in establishing the child-support amount. In her CS-41 income affidavit, the wife stated that she earned a monthly income of $1,800. In his CS-41 income affidavit, the husband stated that he was not earning income. Because of the value of certain assets belonging to the husband, including the husband’s interest in the partnership and certain other assets that are in addition to the husband’s interest in the partnership that are not at issue in this appeal, the trial court imputed an income of $5,000 per month to the husband. Regarding the wife’s income, the trial court stated in its judgment:
“[The wife] testified her minimum monthly] expenses (some which include the children’s expenses) were [$3,230].... [The wife] saved approximately [$19,000] since the filing of the Complaint for Divorce on or about March 18, 2014, to date of trial. Therefore, the Court imputes a monthly income to [the wife] of [$3,500].

((

“,.. The child support is set pursuant to Rule 32 Child Support Guidelines, Rule of Judicial Administration^] after Court imputed income to the parties. Child Support Guideline Forms, [the wife’s] CS-41, [the husband’s] CS-41 and the CS-42, are filed in this cause.”
The wife and the husband both filed timely motions to alter, amend, or vacate various provisions of the judgment pursuant to Rule 59, Ala. R. Civ. P. In his postjudgment motion, the husband requested, among other things, that the trial court grant him decision-making authority over certain aspects of the children’s lives and that the visitation provisions of the judgment be modified to grant him additional custodial time with the children. The trial court held, a hearing on the post-judgment motions on April 13, 2015. On April 24, 2015, the trial court entered an *1169 order modifying the visitation.provisions of the judgment and the provision of the judgment relating to health insurance for the children but denying all other relief requested by the parties in their respective postjudgment motions. The husband filed a timely notice of appeal. The wife filed a timely cross-appeal.
Discussion
On' appeal, the husband challenges the trial court’s determination regarding custody of the children and the trial court’s determination that his interest in the partnership was a marital asset. On cross-appeal, the wife contends that the trial court incorrectly assigned a monthly income to her of $3,500. .
I. The Husband’s Appeal
A. Custody
The husband contends that the judgment is inconsistent because, he asserts, although the trial court concluded that “shared” custody would be in the best interest of the children, the trial court granted the wife sole legal and sole physical custody of the children. The husband also contends that the trial court’s determination to grant sole legal and sole physical custody of the children to the wife is not supported by the evidence.
The judgment provides that the parties shall have “shared parental responsibility” and granted “shared custody” of the children “with the primary residence being with [the wife].” The judgment appears to equate the terms “shared custody” and “shared parental responsibility” with “joint custody” and defines “shared parental responsibility” as an arrangement in which “both parents retain full parental rights and responsibilities with respect to their children and requires both parents to confer so that major decisions affecting the welfare of the children will be determined jointly.”
The husband correctly notes in his brief on appeal that § 30-3-151, Ala.Code 1975, a part of Alabama’s joint-custody statutes, Ala.Code 1975, §§ 30-3-150 through -157, does not contain a definition for the terms “shared custody” or “shared parental responsibility” as used in the judgment. “As we have explained before, the proper terms for custody judgments are contained in Ala.Code 1975, § 30-3-151, which became effective on January 1, 1997. See Harris v. Harris, 775 So.2d 213, 214 (Ala. Civ.App.1999).” Smith v. Smith, 887 So.2d 257, 261 (Ala.Civ.App.2003). Section 30-3-151 defines the following terms:
“(1) Joint Custody. Joint legal custody and joint physical custody,
“(2) Joint Legal Custody. Both parents have equal rights and responsibilities for major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training. The court may designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions.
“(3) Joint Physical Custody. Physical custody is shared by the parents in a way that assures the child frequent and substantial contact with each parent. Joint physical custody does not necessarily mean physical custody of equal durations of time.
“(4) Sole Legal Custody. One parent has sole rights and responsibilities to make major decisions concerning- the child, including, but not limited to, the education of the child, health care, and •religious training.
“(5) Sole Physical Custody. One parent has sole physical custody and the other parent has rights of visitation except as otherwise provided by the court.”
Using the terms set out in § 30-3-151 it is apparent that the divorce judgment provides that the wife will have sole *1170 physical custody of the children, subject to the husband’s visitation rights. Furthermore, although the divorce judgment requires the parties to confer regarding major decisions affecting the welfare of .the children, the judgment gives the wife the final authority to make all major decisions when the parties cannot agree. Such a determination constitutes an order of sole legal custody. See Gallant v. Gallant, 184 So.3d 387, 403 (Ala.Civ.App.2014)(“We must agree with the father that the judgment, as modified, does not give him final authority over any aspect of the children’s lives, so the mother must now be considered the sole legal custodian of the children, subject only to the father’s limited rights under the terms of the judgment.”).
We first address the husband’s contention that the trial court’s determination that “shared” or joint custody would be in the children’s best interest is inconsistent with the trial court’s order providing for, in practical effect, sole physical custody and sole legal custody to the wife. The record does not show that the husband ever raised this point with the trial court after the entry of the divorce judgment. Although the husband’s post-judgment motion requested that he be awarded joint legal custody, he never asked the trial court to correct or clarify what he contends is an inconsistency in the judgment, nor did he ask the trial court to modify the judgment based on an allegedly inconsistent finding. “[T]he general rules regarding the necessity for post-trial motions is that, ordinarily, issues not raised before the trial court may not be raised for the first time on appeal.” Green v. Taylor, 437 So.2d 1259, 1260 (Ala.1983). Therefore, the husband’s argument regarding an alleged inconsistency in the judgment has not been properly preserved for appellate review. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”); see also Gotlieb v. Collat, 567 So.2d 1302, 1304 (Ala.1990) (“This Court cannot put a trial court in error for failing to ... accept arguments that, according to the record, were not presented to it.”).
The husband contends that the trial court erred by granting sole physical custody of the children to the wife. In his postjudgment motion, the husband requested a modification of the judgment only insofar as it awarded the wife sole legal custody of the children. Further, he requested in the postjudgment motion that the trial court modify the visitation provisions of the judgment to grant him additional visitation with the children. Because he failed to raise this issue in the trial court, the issue has not been preserved for appellate review. See Andrews, supra, and Gotlieb, supra.
The husband contends that the trial court erred in granting the wife sole legal custody of the children. Section 30-3-152, Ala.Code 1975, provides:
“(a) The court shall in every case consider joint custody but may award any form of custody which is determined to be in the best interest of the child. In determining whether joint custody is in the best interest of the child, the court shall consider the same factors considered in awarding sole legal and physical custody and all of the following factors:
“(1) The agreement or lack of agreement of the parents on joint custody.
“(2) The past and present ability of the parents to cooperate with each other and make decisions jointly.
“(3) The ability of the parents to encourage the sharing of love, affection, and contact between the child and the other parent.
*1171 “(4) Any history of or potential for child abuse, spouse abuse, or kidnapping.
“(5) The geographic proximity of the parents to each other as this relates to the practical considerations of joint physical custody.”
The evidence in this case was conflicting. The trial court made its custody determination after receiving ore tenus testimony of the parties.
“The presumption of correctness in a trial court’s ruling where evidence is presented ore tenus is especially applicable where, as here, the evidence is conflicting. Ex parte P.G.B., [600 So.2d 259 (Ala.1992) ]. ‘The reason for the ore ten-us rule is well-established, i.e., that the trial court had the opportunity to observe witnesses as they testified, to judge their credibility and demeanor, and to observe what this court cannot perceive from a written record.’ Dobbins v. Dobbins, 602 So.2d 900, 901 (Ala.Civ.App.1992). The perception of an attentive trial judge is especially critical in a child custody case. This court is not permitted to substitute its judgment on appeal for that of the trial court if, from the evidence, there is any reasonable inference that the trial court’s decision is correct. Jones v. Wright, 555 So.2d 1127 (Ala.Civ.App.1989).”
G.T.R. v. U.D.R., 632 So.2d 495, 497 (Ala.Civ.App.1993).
The husband directs this court to testimony showing that the husband assisted the children with their homework, that the husband sometimes transported the children to school, and that the husband loved the children. The husband also contends that the evidence fails to show that he and the wife had problems with communicating or cooperating regarding major decisions impacting the children. However, the trial court also heard testimony that the husband did not help the children get ready for school in the mornings and that, instead, he would sleep in most days, that the husband would lose his temper and yell at the children, that the husband has a history of erratic driving that resulted in the suspension of his driver’s license, that the husband was deceitful with the wife concerning his employment status and the suspension of his driver’s license, and that the husband failed to offer any monetary support for the wife and the children when the wife left the marital home.
There is sufficient evidence in the record to support the trial court’s decision, after the trial court weighed the evidence, to grant the mother sole legal and sole physical custody of the children.
B. Property Division
The husband next contends that the trial court improperly awarded the wife $300,000 from his interest in the partnership because, he contends, his ownership interest in the partnership is a part of his separate estate and because none of the funds from the partnership had been used for the benefit of the parties or the family.
“A party’s “‘separate estate” is that property over which [he or] she exercises exclusive control and from which the [spouse] ... derives no benefit by reason of the marital relationship.’ Gartman v. Gartman, 376 So.2d 711, 713 (Ala.Civ.App.1978). The separate estate of the parties in a divorce proceeding includes property owned prior to the marriage and property received by gift or inheritance during the marriage. § 30-2-51(a), Ala.Code 1975. Although marital property generally includes property purchased or otherwise accumulated by the parties during the marriage, it may also include the property acquired before the marriage or received by gift or inheritance during the marriage when it -is used, or income *1172 from it is used, regularly for the com.mon benefit of the parties during, their marriage. See § 30-2-51(a), Ala.Code 1975.
“The trial judge is granted broad discretion in determining whether property purchased before the parties’ marriage or received by gift or inheritance was used ‘regularly for the common benefit of the parties during the marriage.’ See § 30-2-51, Ala.Code 1975. Even if the trial court determines that such, property was regularly used for the common "benefit of the parties during the marriage, the determination whether to include such property in the marital assets to be divided between the parties lies within the discretion of the trial court. [Ex parte Durbin], 818 So.2d 404 (Ala. 2001).”
Nichols v. Nichols, 824 So.2d 797, 802 (Ala.Civ.App.2001).
Section 30-2-51(a), Ala.Code 1975, reads:
“If either spouse has no separate estate or if it is insufficient for the'maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse’s family. Notwithstanding--the foregoing, the judge' may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift, unless the judge finds from , the evidence that property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage.”
We first address the wife’s contention that the husband’s interest in the partnership was not conveyed to him by inheritance. The wife contends that, instead, the husband was merely a party to the partnership agreement and that the husband’s interest in the partnership came to him, pursuant to that agreement and not by gift or inheritance. At trial, however, the husband offered uncontested testimony that his father established the partnership as an inheritance vehicle for the husband and his brothers. The husband testified that only his father made any contributions to the partnership. Therefore, there is insufficient evidence to support the wife’s contention that the husband’s interest in the partnership assets was acquired by the husband other than through inheritance,
We next must determine whether the trial court could have found that the husband’s interest in the partnership, or income produced by his interest in the partnership, has been used regularly for the common benefit of the parties during the marriage. The phrase “used regularly for the common benefit of the parties during their marriage” is not defined in § 30-2-51(a). This court recently stated:
“It does hot appear from our research that the legislature or our supreme court has definitively; explained what constitutes ‘regular [use] for the common benefit of the parties during their marriage,’ However,
“ ‘ “[§ ] 30-2-51 states, that if a party does not use. his or her inheritance or gifts for the common benefit of the parties to the marriage, then the trial judge may not consider the inheritance or gifts when making a property division. Nothing in the statute states that if one party’s inheritance or gifts are used for the parties’ common benefit then the trial judge must consider the, inheritance or gifts when making the property division. In fact, the statute leaves such a determination to the discretion of the trial judge....”
*1173 “ ‘[Ex parte Drummond,] 785 So.2d [358,] 362 [ (Ala.2000) ].’
“Ex parte Durbin, 818 So.2d 404, 408 (Ala.2001).”
Vardaman v. Vardaman, 167 So.3d 342, 347 (Ala.Civ.App.2014).
The husband contends that the assets or funds held by the partnership were never used for the common benefit of the parties. The trial court made no specific finding concerning its decision to distribute funds from the partnership to the wife. The evidence supports the husband’s contention that the parties never withdrew funds from the partnership. The wife, however, contends that the evidence established that the partnership generated income from interest and dividends that created tax liabilities for the husband and the wife and that were reported on their joint tax returns and that decreased the amount of any tax refund they might otherwise have received. The wife directs this court to her testimony indicating that she paid one-half of the balance of any tax liabilities from her individual earnings. We have held that stock held solely by one party as separate property was not used for the common benefit of the parties when the dividends from that stock were automatically reinvested, the dividends were reported as income on the parties’ joint tax return, and the parties paid taxes based on those dividends. See Kreitzberg v. Kreitzberg, 80 So.3d 925, 931-32 (Ala.Civ.App.2011). The fact that a party’s separate property might create tax liabilities that are borne by both parties is not, in itself, a basis for a conclusion that the separate property was used for the common benefit of the parties.
In this case, however, both parties testified that they had treated the husband’s interest the partnership as a part of their retirement plans and that they had forgone other retirement-planning activities based on -that characterization of the husband’s interest in the partnership. The husband and the wife testified that they had established other retirement accounts while they were both employed. The husband’s retirement account had a balance of approximately $61,000, and the wife’s retirement account had a balance of approximately $60,000.[1] The husband testified that, because his interest in the partnership could fund the parties’ retirement, the parties ultimately decided to forgo contributing to their other retirement accounts. This testimony was not controverted. Under cross-examination from the wife’s attorney, the husband testified as follows:
“Q. You had conversations early on during the years of your marriage, conversations with your wife about that being yours and hers retirement and security for the future.
“A. Yes.
“Q. For a period of time, did you forgo contributing to an individual retirement account or a 401(k) account because you had the'family partnership to rely on for retirement?
“A. Not solely for that reason, but yes.
“Q. That was at least a part of it?
“A. Yes.
“Q. So but for your reliance, had you contributed earlier, theoretically you could have more funds in retirement, couldn’t you?
“A. Theoretically, I suppose.”
The husband also testified under cross-examination from the wife’s attorney:
*1174 “Q. And you did talk to your wife about what you just told us today, that you look at that as a retirement fund?
“A. Yes.
“Q. And when you talked to your wife about looking at that as a retirement fund, were you assuming and hoping that you and [the wife] would still be married?
“A. Yes.”
The wife testified as follows in response to questioning from her attorney:
“Q. During the course of your marriage—just yes or no—did you and your husband have conversation relative to the future use of that account?
“A. Yes.
“Q. When approximately do you recall the first time in your marriage that you and your husband had some conversation relative to the future use of that account?
“A. Day one.
“Q. And day one, what do you recall he told you?
“A. That that was our future retirement.”
The trial court could have concluded from this testimony that the husband and the wife had agreed to treat the husband’s interest in the partnership as security for their retirement in lieu of other retirement contributions, thereby redefining what would have been an otherwise excluded inherited asset as a marital asset. It is undisputed that the husband and the wife discontinued contributing to their other retirement funds, at least in part, because of the husband’s interest in the partnership. Therefore, although the parties received no distributions from the partnership during the course of the marriage, the evidence would support a finding by the trial court that the parties’ agreement to consider the husband’s interest in the partnership as retirement security constitutes use of that property for the common benefit of the parties for purposes of § 30-2-51(a).
II. The Wife’s Cross-Appeal— Child Support
The wife argues that the trial court erred in its calculation of child support because it imputed income to her without any evidence that she was voluntarily underemployed. See Rule 32, Ala. R. Jud. Admin, (permitting income to be imputed to a parent upon a finding that a parent is voluntarily unemployed or underemployed).
The wife testified that, in 2005, she started a sewing and embroidering business. In 2007, the wife formed a business entity known as “Mollygram.” She testified that, since 2007, she worked full time in this business, which included sewing, embroidering, and consulting. She testified that her average monthly gross personal income amounted to $1,800. She contends that she was fully employed in her business and that there was no evidence offered to refute the amount of her actual gross income. She testified that her work history reveals that she has never earned more than $1,800 per month.
In the judgment, the trial court imputed income to both parties in determining the proper child-support amount. The wife correctly notes that there was no evidence establishing that she was voluntarily underemployed. However, despite the trial court’s use of the term “imputed” in determining the wife’s monthly income, our review of the record shows that the trial court apparently did not make a determination that the wife was voluntarily underemployed in reaching the determination that the wife’s income was higher than she claimed. Rather, the trial court in its judgment determined that the wife had “saved approximately $19,000 since the filing of the Complaint for Divorce on or *1175 about March 18, 2014 to [the] date of trial.” This “savings” apparently was achieved by the wife’s not withdrawing funds that had been earned from her business activities from her business bank account. Under cross-examination by the husband’s attorney, the wife testified as follows:
“Q. You have been putting some money aside, have you not?
“A. Yes, sir.
“Q. And that money shows up in your checking account?
“A. In my Mollygram checking account, yes.
“Q. Has there been a particular occasion for you to set that money aside? That’s just a yes or a no.
“A. Yes.
“Q. What has been the purpose of setting aside that money?
“A. There has been a couple of different purposes. First is the two times during our marriage that [the husband] has been without a job and the infrequency of my job and fluctuations in that income. It just made me feel better to know that there was money there in case we couldn’t pay our bills or in case anything happened that we could pay the bills and pay that, you know, by paying a salary to Molly—to me through Mollygram. And right now, it’s my nest egg. It’s just in case something were to happen with one of the girls or something were to happen to me or if I got sick that I have money set aside for that and just planning for the future.
“Q. And give the Court an estimate of what the amount of money you have been able to set aside has been.
“A. Over the last three to four years, $50,000.
“Q. How have you been able to set it aside?
“A. Just through selling my Molly-gram shirts and working for Applique Corner. And I just don’t withdraw the money.”
According to the evidence, the wife’s business account for Mollygram had an ending balance of $86,371.11 in March 2014. The December 2014 bank statement for that account shows that the final balance of $55,582. From the date of the filing of the complaint in March 2014 to the December 2014 statement, the account accrued by $19,160.89. During the period that the wife was able to accumulate those funds, the husband was paying the wife a $923 per month in child support pursuant to the trial court’s temporary order.
Additionally, the wife testified that she earned approximately $500 per week ($2,166.67 per month) for work performed for Applique Corner, that she would earn an additional $840 per month for embroidery work, that her Mollygram business earned an additional $300 per month, that Applique Corner also would pay her $10 per hour to construct sales flyers, and that she has received additional payment from Applique Corner for other ancillary work she performs for it such as making “font card books.” Despite the use of the term “imputed,” we conclude that the trial court could have determined that the wife’s testimony concerning her monthly income combined with her ability to accumulate earnings in her business account established that her monthly income amounted to $3,500. Because there is evidence to support the trial court’s judgment as to the wife’s monthly income, we affirm the trial court’s judgment as to this issue.
Conclusion
For the foregoing reasons, we affirm the judgment of the trial court.
APPEAL—AFFIRMED.
THOMPSON, P.J., and PITTMAN, J., concur.
*1176 THOMAS, J., concurs in part and dissents in part, with writing, which MOORE, J., joins.
CROSS-APPEAL—AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. In its judgment, the trial court awarded the husband and the wife his or her individual retirement account.