On Applications for Rehearing

THOMAS, Judge.
The opinion of March 1, 2013, is withdrawn, and the following is substituted therefor.
These consolidated appeals are taken from judgments of the Baldwin Circuit Court dividing the marital property of Ernest Kreitzberg (“the husband”) and Myra Kreitzberg (“the wife”) and reevaluating the husband’s alimony obligation on remand from this court’s decision in Kreitzberg v. Kreitzberg, 80 So.3d 925 (Ala.Civ.App.2011) (appeal no. 2110920), and finding the husband to be in civil contempt for his failure to pay the wife any amount of alimony during the pendency of the appeal in Kreitzberg (appeal no. 2111066). This court summarized much of the pertinent factual and legal background in Kreitzberg, 80 So.3d at 926-30, as follows:
“After nearly 35 years of marriage, the husband filed a complaint for a divorce in the trial court on July 9, 2009, claiming incompatibility of temperament and an irretrievable breakdown of the marriage. The wife answered the complaint and counterclaimed for a divorce on September 23, 2009. In her counterclaim, the wife alleged that the husband *616 had physically and emotionally abused her during the course of the marriage. On March 9, 2010, the husband amended his complaint for a divorce to include an allegation that the wife had physically and emotionally abused him during the course of the marriage. The wife answered the amended complaint and denied the allegations of abuse. The parties conducted discovery.
“On October 6 and 18, 2010, the trial court conducted a trial regarding the husband’s divorce complaint and the wife’s counterclaim for a divorce. The husband and the wife were the only witnesses to testify during the two-day trial.
“The husband testified at trial that he had received an inheritance from both his mother and his aunt. Specifically, he testified that he had inherited 2,484 shares of ExxonMobil Corporation stock from his mother after her death on January 30, 1997. He stated that those shares of stock had been transferred into his name alone. He further testified that a program called ‘Computer Share’ manages the stock and that that program continually reinvests any dividend income that the stock produces. He stated that the wife’s name was never on his stock account with ExxonMo-bil.
“In addition to the ExxonMobil stock, the husband testified that he had inherited $99,712 in cash from his mother. He stated that, upon receipt of the cash, he immediately had taken the money to the bank, had sent $8,000 of the money to the United States Treasury to pay taxes on the inheritance and had placed the remaining $91,712 into a certificate of deposit (‘CD’). He testified that he had purchased that CD at the State Bank of Countryside in Countryside, Illinois. He further testified that the CD had been placed in his name only. The husband testified that he had continually reinvested the money in the CD, along with any investment income from the CD, in the form of a CD until 2005. He testified that in 2005 he had moved the CD from the State Bank of Countryside to AmSouth Bank (‘AmSouth’) in Fair-hope and that the CD had remained in the form of a CD with AmSouth from 2005 until 2008. The husband testified that the CD at AmSouth was placed in his name alone and that all the interest the CD accrued was immediately reinvested.
“The husband testified that in 2008 he had withdrawn all the money in the CD, which had grown to $133,312.25, and had purchased ExxonMobil stock with it. He also stated that any dividend income derived from the stock was immediately reinvested.
“Other than the stocks and cash, the husband also testified that he had inherited $23,000 in United States savings bonds from his mother. He stated that that money was held in the form of savings bonds in his name until 2005, when he redeemed the savings bonds at AmSouth. The husband testified that, after he redeemed the savings bonds, he placed the money into a money-market account held jointly in his and the wife’s names. He stated that he had placed the money in the joint money-market account in order to pay taxes on the investment income his inherited money and stocks had generated because the couple filed joint tax returns.
“The husband also testified that he had inherited assets from his aunt. He testified that she had died in 2008, that he had inherited a total of $87,000 from her estate, and that he had received the money in two separate payments— $60,000 as an initial payment and another $27,000 as the final payment. The *617 husband testified that he had deposited the $60,000 in an account he had opened in his name at Royal Bank of Canada (‘RBC’). He testified that, after having placed the money in the RBC account, he immediately wrote a check for the entire $60,000 to ExxonMobil to purchase 827 shares of stock. He testified that all dividend income derived from that stock was automatically reinvested.
“The husband testified that he had received the final payment of $27,000 in October 2009. He stated that he had placed that money in a personal checking account at RBC in his name and that he had then transferred that money to ExxonMobil to purchase additional shares of stock. He further stated that all the dividend income from that stock was automatically reinvested. He testified that he had never sold any of his ExxonMobil stock or withdrawn any money from his stock account with Exx-onMobil.
“The husband also testified that the dividend income from the ExxonMobil stock was listed on the parties’ joint tax returns. He stated that in some years the parties had a tax liability upon which they paid taxes to the United States government. He testified that the total amount of taxes the parties had paid on the ExxonMobil dividends was $8,560 and that the total taxes they had paid after redeeming the savings bonds was $10,980. He further testified that the total taxes the parties had paid from 1997 until 2009 on any income derived from inherited assets was $32,253.
“He testified that the assets of the marital estate included a 2003 Saturn automobile, a scooter, a rowboat with a motor worth approximately $1,000, a 1978 Catalina sailboat worth approximately $2,000-$3,000, and items of personal property. Additionally, he testified that the parties owned their home in Fairhope and that it did not have an outstanding mortgage on it. He opined that the value of the marital residence was $225,000. He stated that he had come to the $225,000 value by considering a large number of comparable homes that had been sold in the parties’ neighborhood.
“The husband also testified that he had an individual retirement account (TRA’) with a balance of around $36,000 at RBC and that the wife also had her own IRA and that the parties had a joint money-market account containing $210,000. He further testified that the parties had a joint checking account with a balance of approximately $1,300. He stated that the parties lived off of the money in the joint checking account. He testified that the joint checking account is funded by his Social Security benefits and his two retirement accounts. Specifically, he stated that he has a pension with JI Chase Company from which he receives approximately $363 per month and a pension with Allis Chalmers Manufacturing Company from which he receives approximately $580 per month. Additionally, he stated that his Social Security check of $1,678 per month is also deposited into the account, while the wife’s Social Security check of approximately $598 is deposited into her own separate checking account.
“The husband testified that he had withdrawn a total of $16,000 from the parties’ joint checking account to pay his attorneys throughout the divorce action. He stated that he did not expect the wife to pay for his attorney fees but that he felt the parties should split the cost of the attorney fees in the divorce action. He also asked the court to award each party 50% of the money-market account containing $210,000. Additionally, he stated that he would like the *618 court to award each party 50% of the parties’ monthly joint income, which comprises his JI Chase pension, his Allis Chalmers pension, his Social Security check, and the wife’s Social Security check. This division would provide each party with roughly $1,600 per month. He also stated that he did not mind if the wife was awarded the 2003 Saturn automobile but that he would like the parties’ Catalina sailboat, the scooter, and the rowboat.
“The husband testified that he had never committed any act of domestic violence against the wife. However, he testified that the wife had committed acts of domestic violence against him on two separate occasions. He stated that the wife had thrown a plate that struck his head, causing the police to be called, that resulted in the wife’s being arrested for domestic violence on July 4, 2009. He also testified that the wife had struck him in the eye while he was driving. He testified that he did not notify the police of this incident but that he did go to the hospital to seek medical attention as a result of the incident. He stated that the wife had called the police regarding the parties’ disagreements, but, he said, he had never been arrested.
“The husband testified that the wife’s relationship with her daughter, Michelle Kainz, and Kainz’s grandchild had created problems in the marriage. He opined that Kainz does not like him and that she plots against him. He testified that he did allow the wife to have private telephone conversations with Kainz, but that he had told the wife that he preferred to be involved in any telephone conversations she had. He also stated that he was not trying to control the wife. He testified that he had requested that Kainz stop sending the wife pictures of Kainz’s granddaughter because the pictures upset the wife because they reminded her that she was not able to visit the child. The husband also testified that he did not shout obscenities at the wife or call her names.
“The wife testified that the parties’ marriage had deteriorated over the years. She testified that the parties had serious marital problems, including verbal abuse, emotional abuse, and physical abuse. The wife stated that those problems had started in the 1980s but had gotten much more severe after the husband retired because the parties spent more time together. She testified that she had filed for a divorce in the mid-1980s because of an incident in which the husband had cornered her and threatened to kill her. She testified that the husband had threatened to kill her several other times, but, she said, he did not threaten to kill her every time they had a dispute. She testified that he would talk to her in a demeaning way and that he had threatened to burn down the parties’ home. She further testified that the husband would throw objects at her. Specifically, she testified that he had thrown a wooden stool, paints, and a dog bowl full of water, which had hit her in the back of the head. She also testified that the husband had hit her with a magazine and a remote control. She testified that he had spit in her face. She also stated that he had abused her approximately once a month from the year 2000 until the present.
“The wife testified that she had thrown a plate at the husband on July 4, 2009, and that she had been arrested on a charge of domestic violence regarding that incident. She stated that the charges had been dropped and that she had thrown the plate in response to the husband’s constant emotional abuse. *619 The wife testified that she had never struck the husband in the eye.
“The wife testified that the husband had 11,626.992 shares of ExxonMobil stock with a value of approximately $758,000. She testified that the parties had paid taxes on the stock from their joint money-market account. However, she testified that the husband had placed only $23,000 of his inheritance in the parties’ joint money-market account and that he had kept the rest of the money and assets he had inherited separate. She stated that, other than the $28,000 deposited into the joint money-market account, the husband’s inheritance had never been used for the common benefit of the parties.
“The wife testified that the value of the marital residence was $247,000. She stated that she did not care to keep the marital residence but that she would like 50% of the parties’ equity in the house. She also testified that she wanted the trial court to order that the parties’ IRA accounts be equalized because her IRA contained about $31,000 while the husband’s IRA contained about $35,000. She also testified that she wanted her personal checking account, with a value of approximately $2,000, to be awarded entirely to her.
“In regard to additional income, the wife testified that she had considered her monthly expenses following the divorce. She testified that her monthly living expenses would be $2,845.74, which included the cost of paying rent because she was not asking for the marital residence. The wife did not dispute the husband’s testimony regarding the parties’ monthly income, and she testified that the parties’ monthly income included about $300 from the husband’s JI Chase pension, about $500 from the Allis Chalmers pension, about $1,600 from the husband’s Social Security check, and about $600 from her Social Security check. She testified that she would like the trial court to split the parties’ monthly income evenly between the parties, which would give her approximately $1,600 per month. ■ She further asked the trial court to award her $1,500 in monthly alimony in order to provide her with the additional money she would need in order to pay for all of her expenses following the divorce.
“The wife further testified that she had had serious health issues throughout the marriage. She had had open-heart surgery in 2005 and in 2006. The wife also testified that she had had a stroke in 2006 and that she had had a plate placed in her foot in 2008. She further testified that she had had a hip replacement in 2007 and that she will most likely require another surgery on her foot in the future.
“After considering the ore tenus testimony and the trial exhibits, the trial court entered a judgment on November 19, 2010, divorcing the parties on the grounds of incompatibility and physical and emotional abuse by the husband. Pursuant to its November 19, 2010, judgment, the trial court ordered the division of the martial assets as follows: (1) the husband was awarded 100% of the ExxonMobil stock; (2) the husband was awarded the marital residence, which the trial court found to have a fair market value of $247,000; (3) the wife was awarded 65% of the equity in the marital residence, and, accordingly, the husband was ordered to pay the wife $160,550; (4) the wife was awarded 50% of the value of the parties’ joint checking account plus an additional $8,000 as reimbursement for the $16,000 the husband had withdrawn from the joint account; (5) the wife was awarded the 2003 Saturn automobile; (6) the husband *620 was awarded the parties’ Catalina sailboat, the scooter, the rowboat, and a trailer; (7) the wife was awarded 50% of the parties’ joint money-market account, plus an additional $5,000 as reimbursement for $10,000 the husband had withdrawn from the money-market account during trial; (8) the husband was ordered to pay the wife $757.69 in order to equalize the parties’ IRA accounts; (9) the wife was awarded periodic alimony in the amount of $2,500 per month; (10) the husband was ordered to pay the wife’s attorney fees in the amount of $14,625; and (11) the parties were awarded specific items of personal property.
“On December 20, 2010, the husband filed a timely notice of appeal. The wife filed a cross-appeal on December 30, 2010.”
(Footnote omitted.)
In Kreitzberg, we concluded that the trial court’s award of $2,500 per month in periodic alimony to the wife was excessive in light of the fact that the husband’s monthly income was $2,621 and that all of his monthly income was derived from his retirement benefits. Id. at 934. Thus, “we reverse[d] the trial court’s periodic-alimony award because the award violate[d] § 30-2-51(b)(3),” Ala.Code 1975, and, “because an award of alimony must be considered together with the division of marital property, see Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App.1995), we also reverse[d] the judgment insofar as it divided the marital property,” and we “instructed [the trial court, on remand,] to adjust the alimony award and the property division as it considers appropriate in light of the parties’ retirement incomes and the fact that the ExxonMobil stock is an asset of the husband’s separate estate.” Id. This court’s opinion in Kreitzberg was released on September 2, 2011, and this court issued a certificate of judgment on September 21, 2011.

I. The Property-Division Appeal (Appeal No. 2110920)

On September 22, 2011, the husband filed a motion requesting a hearing regarding the issues to be addressed as a result of this court’s reversal of the trial court’s November 19, 2010, judgment; that same day the husband filed a motion for an accounting of the parties’ funds, alleging that the wife had removed moneys from the parties’ accounts during the pendency of the appeal. On March 1, 2012, the trial court entered a judgment on remand dividing the parties’ marital property and recalculating the husband’s alimony obligation in accordance with this court’s instructions in Kreitzberg. The judgment on remand indicated that all provisions of the November 19, 2010, judgment were incorporated into that judgment, with the exception that the trial court awarded the wife $1,310.50 in monthly periodic alimony and awarded the wife an additional $84,000 property settlement. On March 7, 2012, the husband filed a motion to alter, amend, or vacate the trial court’s judgment; that same day the husband filed an amended postjudgment motion. On May 14, 2012, the trial court entered an order denying the husband’s motion for an accounting; that same day the trial court denied the husband’s postjudgment motion and amended postjudgment motion. The husband timely appealed the trial court’s March 1, 2012, judgment to this court on June 19, 2012.
In this appeal, the husband contends that the trial court erred in dividing the parties’ marital property and awarding the wife alimony on remand because, he says, the trial court’s property division is inequitable and the trial court improperly considered his separate estate in fashioning its property division and award of ali *621 mony. Specifically, he argues that comments contained in the record on appeal indicate the trial court considered his separate estate in “determining both the amount of alimony and the property division” and that he would be forced to liquidate assets of his separate estate to pay the amounts awarded to the wife.
“Our standard of review regarding a property division and an award of periodic alimony is well settled.
“ ‘When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001); Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993); and Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So.2d at 1038.’
“Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009).
“ ‘The issues of property division and alimony are interrelated, and they must be considered together. Albertson v. Albertson, 678 So.2d 118 (Ala.Civ.App.199[5]). A property division is not required to be equal, but it must be equitable. Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996). In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages and health; the length of the parties’ marriage; and the source, value, and type of marital property. Robinson v. Robinson, [795 So.2d 729 (Ala.Civ.App.2001)]; Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App.1986). In addition, the trial court may also consider the conduct of the parties with regard to the breakdown of the marriage.... Ex parte Drummond, 785 So.2d 358 (Ala.2000); Myrick v. Myrick, 714 So.2d 311 (Ala.Civ.App.1998); Lutz v. Lutz, supra.’
“Pate v. Pate, 849 So.2d 972, 976 (Ala.Civ.App.2002).”
Spuhl v. Spuhl, 120 So.3d 1071, 1075 (Ala.Civ.App.2013).
The husband contends that the trial court exceeded its discretion in dividing the parties’ marital property on remand. Specifically, he asserts that the additional $84,000 award to the wife renders the property division inequitable because, he says, he would have to liquidate assets of his separate estate to pay the additional $84,000 and the $1,310.50 monthly periodic-alimony award. We disagree.
The ore tenus evidence indicated that the marital property consisted of the marital residence, the parties’ personal property, a 2003 Saturn automobile, a scooter, a rowboat with a motor worth approximately $1,000, a 1978 Catalina sailboat worth approximately $2,000-$3,000, a joint money-market account with a value of $210,000, and a joint checking account with a balance of approximately $1,300. Moreover, each party had an individual retirement account (“IRA”) valued at approximately $36,000.[1]
*622 In this case, the husband was awarded his IRA, the scooter, the rowboat, the 1978 Catalina sailboat, half of the funds in the parties’ joint money-market account, half of the funds in the parties’ joint-checking account, and the marital residence. Based on the testimony regarding the value of the parties’ marital property and the trial court’s findings regarding the value of the marital residence,[2] the husband received an award of approximately $892,650.[3] However, the husband was required to pay the wife $160,550 as her portion of the equity in the marital residence; thus, the husband’s net award had a value of approximately $232,100.[4] The wife was awarded $160,550 as her portion of the equity in the marital residence, her IRA, the $84,000 property award, the 2003 Saturn automobile, half of the funds in the parties’ joint money-market account, and half of the funds in the parties’ joint-checking account.[5] Therefore, the wife received a net award of approximately $386,200.[6] Accordingly, the property division is not wholly inequitable on its face.
Additionally, the husband was awarded assets, such as the marital residence, which he could either sell or use as collateral to secure a loan to pay the additional $84,000 award to the wife, without having to liquidate any of his separate estate. The husband’s award also contained several liquid assets, such as half of the funds in the parties’ money-market account, from which he could have paid the wife $84,000, again without having to resort to the assets that composed his separate estate or having to sell the marital residence. Moreover, the trial court reduced the husband’s alimony award as instructed by this court in Kreitzberg, which left the husband with a monthly income of $1,310.50 from which to pay his monthly expenses. Thus, we cannot agree with the husband’s contention that the property division contained in the trial court’s March 1, 2012, judgment required the husband to liquidate assets of his separate estate.
Moreover, based on the ore tenus testimony presented, the trial court deter *623 mined that the husband was at fault for the breakdown of the marriage due to his physical and emotional abuse of the wife. The testimony also indicated that the parties had been married for nearly 35 years, that the wife had suffered from serious health issues in the years proceeding the divorce, and that each party had reached the age of retirement. Accordingly, based on the ore tenus evidence presented regarding the factors the trial court was to consider in dividing the parties’ marital property, see Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App.1996), along with the testimony indicating the relative value of both the husband’s and the wife’s net awards, we cannot conclude that the trial court exceeded its discretion in dividing the parties’ marital property.
Next, the husband argues that the trial court erred to reversal in fashioning its property division because, he says, the record indicates that the trial court imper-missibly considered the husband’s separate estate. The trial court determined that the husband’s ExxonMobil stock and any of his inheritance was part of the husband’s separate estate pursuant to § 30-2-51(a), Ala.Code 1975, in both its November 19, 2010, judgment and its March 1, 2012, judgment. Moreover, the trial court stated on the record that it did not consider the husband’s separate estate as an asset that it was able to award to the wife but, instead, that it balanced the equities between the parties on remand as a result of this court’s reversal of its original award of alimony to the wife. Specifically, the trial court stated:
“While I understand that [the hus-bandj’s Exxon stock is completely owned by him and I can’t take that into consideration at all in the award and I am not and I have not, the fact that that may be the only way he can pay [the wife] because he either doesn’t want to sell the house or whatever reason, to me is irrelevant. Because my award is based strictly out of the assets that the parties had at the time of the divorce. The value of the home, the money in the joint money market account, the money in the checking account. So anyway with that said when I read the — when I read the ruling of the Appellate Court I read it to mean that while I based my property division the award to [the wife] a certain amount of money in the marital estate based on her having a sufficient amount per month to live on, that if I take away some of that then I have the ability to restructure the property settlement in a way that I believe accommodates the intent of my order. Not circumventing or not trying to skirt around the alimony the rules regarding the Exxon stock or the retirement. But certainly if I believed that [the wife] based on the facts and circumstances in this case should be provided from the marital assets sufficient money to meet her needs based on the circumstance, then I believe they have — get specifically instructed me that that is my duty today is to readjust those equities to make sure that occurs.
“I’m going to make her an additional award of property settlement that may come from the sale of the home or from the funds in money market and checking account in the amount of $84,000.”
Additionally, at the hearing regarding the husband’s postjudgment motion and amended postjudgment motion, the trial court further stated:
“I did hours and hours of financial calculations in this case, and I came up with an amount that I felt was equitable to [the wife], that did not invade the separate property in the separate estate of [the husband] that would ensure that *624 she was cared for, at least, sufficiently. I still don’t believe it was enough to provide her the same quality of life, but I tried my best to do what I could under the parameters that I was given by the Court of Civil Appeals. And that is the number that I felt created an equitable division of property in this case. And I limited my alimony award to exactly what the Court of Civil Appeals told me that I could, so that will stand.”
Thus, in contrast to the husband’s assertions in his appellate brief, the trial court explicitly stated that it had not considered the husband’s separate estate in fashioning its property award. Additionally, the trial court correctly noted that it was allowed to balance the equities on remand to account for the lower periodic-alimony award to the wife. Therefore, due to the comments contained in the record on appeal along with the discretion afforded the trial court in dividing the parties’ marital property and awarding alimony, we cannot conclude that the trial court’s judgment is due to be reversed on the basis that the trial court impermissibly considered the husband’s separate estate in fashioning its award on remand because the record does not support such a conclusion.
Accordingly, because “ ‘[a] property division does not have to be equal in order to be equitable based on the particular facts of each case,’ ” Harmon v. Harmon, 928 So.2d 295, 298 (Ala.Civ.App.2005) (quoting Baggett v. Baggett, 855 So.2d 556, 559 (Ala.Civ.App.2003)), and because “‘a determination of what is equitable rests within the sound discretion of the trial court,’ ” id., we cannot conclude that the trial court exceeded its discretion in dividing the parties’ marital property and awarding the wife alimony on remand under the facts presented in this case. Therefore, we affirm the trial court’s March 1, 2012, judgment insofar as it divided the parties’ marital property and awarded the wife $1,310.50 in monthly periodic alimony.

II. The Contempt Appeal (Appeal No. 2111066)

During the pendency of the appeal in Kreitzberg, the wife filed a petition for contempt on January 3, 2011, alleging that the husband had failed to pay alimony as required in the trial court’s November 19, 2010, judgment. In her contempt petition, the wife also requested that the husband be held responsible for paying the attorney fees she had incurred as a result of the petition. On February 2, 2011, the husband answered the wife’s petition for contempt. The husband also filed a counterclaim requesting a reduction in the amount of periodic alimony, alleging that he was unable to pay the $2,500 monthly amount. The wife initiated discovery.
On February 11, 2011, the wife filed a motion to dismiss the husband’s counterclaim. On April 20, 2011, the wife filed a motion to compel answers to her discovery requests in the contempt action. Subsequently, the husband filed a motion styled as a “motion to stay and/or for the trial court to recuse.” In that motion, he requested that the trial judge recuse herself because, he alleged, she had shown bias against the husband in the divorce action, and he also requested that the contempt action be stayed until this court issued a ruling regarding the husband’s pending appeal of the trial court’s November 19, 2010, judgment. The wife opposed that motion and again requested an award for attorney fees incurred as a result of the contempt petition. On June 13, 2011, the trial court entered an order denying the wife’s motion to dismiss the husband’s counterclaim.[7] On June 13, 2011, the trial *625 court also denied the husband’s motion to stay and motion to recuse. The hearing regarding the wife’s contempt petition was continued twice due to conflicts, on account of both the husband and the wife.
As mentioned above, on September 2, 2011, this court released Kreitzberg, 80 So.3d 925, which reversed the trial court’s November 19, 2010, judgment insofar as it had awarded the wife $2,500 in monthly periodic alimony and had divided the parties’ marital property; on September 21, 2011, this court issued its certificate of judgment in Kreitzberg. On September 22, 2011, the husband filed a motion to dismiss the wife’s contempt petition because, he argued, he could not be found in contempt for failing to follow a judgment that this court had reversed. On October 11, 2011, the wife filed a motion for sanctions based on the husband’s alleged failure to respond to discovery requests. On October 27, 2011, the wife filed an answer to the husband’s “counterclaim, motion for reduction of periodic alimony and clarification of court order.” The trial court held a hearing on the pending motions in the contempt action on October 28, 2011. On March 1, 2012, the trial court entered orders denying the husband’s motion to dismiss the wife’s contempt petition and the wife’s motion for sanctions. Additionally, on March 1, 2012, the trial court entered an order finding the husband to be in contempt, calculating the husband’s alimony arrearage, and awarding the wife an $8,500 attorney fee.
On March 7, 2012, the husband filed a motion to alter, amend, or vacate the trial court’s judgment. On March 27, 2012, the wife filed a motion to alter, amend, or vacate the trial court’s judgment. On April 10, 2012, the husband filed a response to the wife’s postjudgment motion. On May 14, 2012, the trial court held a hearing on the parties’ postjudgment motions, and, that same day, the trial court entered an order denying the wife’s post-judgment motion and granting the husband’s postjudgment motion in part and denying it in part. Both parties stipulated on the record of the May 14, 2012, hearing to allow the trial court an additional 90 days to enter a judgment adjudicating all the parties’ claims in the contempt action because at the time of the entry of the May 14, 2012, orders the trial court had yet to determine the issue of an attorney-fee award to the wife. Specifically, in granting the husband’s postjudgment motion in part, the trial court had set aside its attorney-fee award and had ordered the wife’s attorney to provide documentation, as required by Peebles v. Miley, 439 So.2d 137 (Ala.1983), to establish a reasonable attorney-fee award.
On June 7, 2012, the wife filed the affidavit of her attorney, David Shepherd, with the trial court. The affidavit stated:
“My name is David P. Shepherd. I am licensed to practice law in the State of Alabama and have been so licensed for more than 33 years. Attached as Exhibit ‘A’ to this Affidavit is the time I spent regarding the above case which began on December 21, 2010. At trial, the fee of [the wife] was estimated to be Eighty Five Hundred Dollars ($8500). The hourly rate on this case was Two Hundred Fifty Dollars ($250.00) per hour. The time calculated through January 23, 2012, the date of the Final Hearing was 13.6 hours for a total fee of $10,325. The time calculated through the Rule 59 motions (5-16-12) was 46.8 hours for a total fee of $11,700.”
*626 On June 22, 2012, the husband filed a response to the attorney-fee affidavit, alleging that the time Shepherd had spent on the case was excessive and urging the court to consider the issue without holding a hearing. On June 27, 2012, the trial court affirmed its previous award of an $8,500 attorney fee to the wife, thus adjudicating all the parties’ claims regarding the Contempt action. That same day the husband appealed the trial court’s judgment to this court.
On appeal, the husband argues that the trial court lacked the authority to consider the wife’s petition seeking to hold him in contempt for his failure to pay her $2,500 per month in alimony pending the appeal of the divorce judgment. He contends that the trial court could not hold him in contempt of the original November 19, 2010, judgment because, he says, that judgment had been reversed and was no longer effective. He further argues that the trial court could not have held him in contempt for failing to pay the amount of alimony awarded in the judgment on remand because, he says, that judgment was not in existence until the same date the trial court found him in contempt. The husband is incorrect.
First, we note that the husband failed to secure a supersedeas bond while his appeal of the November 19, 2010, judgment was pending. Although the record reflects that he requested that the trial court set a supersedeas bond, the trial court denied that request. The husband failed to request that this court set a supersedeas bond pursuant to Rule 8, Ala. R.App. P. Because he had not secured a supersedeas bond, the husband was required to pay the $2,500 monthly alimony payment to the wife during the pendency of the appeal. See Ryan v. Ryan, 267 Ala. 677, 682, 104 So.2d 700, 704 (1958). His failure to do so was, as determined by the trial court, willful contempt.
We agree with the husband that “[t]he reversal of a judgment, or a part thereof, wholly annuls it, or the part of it, as if it never existed,” and that “[ajnother judgment rendered by a court with jurisdiction must thereafter replace [the reversed judgment].” Shirley v. Shirley, 361 So.2d 590, 591 (Ala.Civ.App.1978). However, our agreement with the husband ends there. In Kreitzberg, we reversed the trial court’s November 19, 2010, judgment insofar as it awarded the wife $2,500 per month in alimony, and we instructed the trial court, on remand, to reduce the amount of alimony awarded to the wife and to adjust the property division as it saw fit to balance the equities of the parties. Kreitzberg, 80 So.3d at 935. Our opinion, which replaced the trial court’s judgment insofar as it awarded the wife $2,500 per month in alimony, required the trial court to redetermine the amount of alimony to be awarded the wife. Our opinion did not entirely absolve the husband of his obligation to pay the wife alimony, it merely required that the amount of that obligation be reduced. Thus, our reversal of the $2,500 monthly alimony obligation in Kreitzberg did not, as the husband contends, serve to remove the basis for holding him in contempt.
Furthermore, insofar as the husband contends that the trial court lost authority to consider the contempt petition due to the timing of the hearing, we disagree. To allow the timing of a trial court’s hearing regarding a petition for contempt to impact a trial court’s authority to enforce its judgment would be contrary to the law and a party’s right to file a motion for contempt. It is well settled that “[a] trial court has the inherent power to enforce its judgments ‘and to make such orders and issue such process as may be *627 necessary to render [the judgments] effective.’ Dial v. Morgan, 515 So.2d 14, 15 (Ala.Civ.App.1987); see also King v. King, 636 So.2d 1249, 1254 (Ala.Civ.App.1994).” Goetsch v. Goetsch, 990 So.2d 403, 413 (Ala.Civ.App.2008). It is also well settled that a party may file a petition for contempt during the pendency of an appeal because by filing a petition for contempt a party initiates a “ ‘separate and independent proceeding’ ” from the underlying action that is being appealed. Wilcoxen v. Wilcoxen, 907 So.2d 447, 449 n. 1 (Ala.Civ.App.2005) (quoting Opinion of the Clerk No. 25, 381 So.2d 58, 59 (Ala.1980)). Allowing the timing of a hearing regarding a contempt petition to dictate a trial court’s authority to decide the petition would be arbitrary and would provide an incentive for a party to delay a contempt hearing should it be to his or her potential advantage. Thus, we conclude that the trial court had the authority to consider the wife’s contempt petition despite the fact that the hearing was held after the issuance of our September 21, 2011, certificate of judgment as to our opinion reversing the trial court’s November 19, 2010, judgment.
Similarly, we cannot conclude that the trial court lacked the ability to calculate the husband’s arrearage of alimony based on the amount of alimony it awarded in the March 1, 2012, judgment, which it entered in compliance with our remand instructions. The trial court determined that the husband was in contempt for failing to pay alimony pending the appeal. The trial court could not have calculated the husband’s arrearage based on the $2,500-per-month alimony obligation that this court had reversed. Instead, the trial court, in compliance with our remand instructions, determined an appropriate amount of monthly alimony— $1,310.50. Based on that reduced amount of alimony, the trial court properly computed the husband’s arrearage. Although our instructions on remand in Kreitzberg did not contemplate calculation of an alimony arrearage, we think it implicit in reversals of this nature that the judgment on remand instituting an alimony obligation in compliance with the remand instructions of this court should be applied retroactively to the date of the judgment this court reversed. See Foster v. Foster, 733 So.2d 454, 455 (Ala.Civ.App.1999) (holding that a child-support order entered in compliance with remand instructions from this court should be retroactive to the date of the divorce judgment reversed by this court); Ex parte McWhorter, 716 So.2d 720, 722 (Ala.Civ.App.1998) (same); see also Smith v. Smith, 928 So.2d 287, 294 (Ala.Civ.App.2005) (recognizing that a party who pays alimony pursuant to judgment that is later reversed on that issue may be entitled to reimbursement for the overpayment); Woolwine v. Woolwine, 549 So.2d 512, 514 (Ala.Civ.App.1989) (same). We find no error on the part of the trial court in holding the husband in contempt for failing to pay alimony pending the appeal or in calculating the husband’s arrearage based on the reduced amount of alimony the trial court awarded in its March 1, 2012, judgment on remand.
Alternatively, the husband argues that, even if the trial court had the authority to find him in contempt of the November 19, 2010, judgment after this court’s reversal of that judgment, the trial court exceeded its discretion in finding the husband to be in contempt of the November 19, 2010, judgment.
We review the trial court’s finding of civil contempt under the following well settled standard of review.
“The issue whether to hold a party in contempt is solely within the discretion of the trial court, and a trial court’s *628 contempt determination will not be reversed on appeal absent a showing that the trial court acted outside its discretion or that its judgment is not supported by the evidence. Brown v. Brown, 960 So.2d 712, 716 (Ala.Civ.App.2006) (affirming a trial court’s decision not to hold a parent in contempt for failure to pay child support when the parent testified that he had deducted from his monthly child-support payment the amount he had expended to buy clothes for the children).”
Poh v. Poh, 64 So.3d 49, 61 (Ala.Civ.App.2010).
“Rule 70A, Ala. R. Civ. P., has governed contempt proceedings in civil actions since July 11, 1994. Rule 70A(a)(2)(D) defines ‘civil contempt’ as a ‘willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.’ ”
Stamm v. Stamm, 922 So.2d 920, 924 (Ala.Civ.App.2004). Moreover, in order to hold a party in contempt under Rule 70A(a)(2)(D), the trial court must find that the party willfully failed or refused to comply with a court order. See T.L.D. v. C.G., 849 So.2d 200, 205 (Ala.Civ.App.2002).
The husband contends that the trial court exceeded its discretion in holding him in contempt because, he says, the testimony indicated that the wife had removed and garnished funds from the parties’ joint accounts during the pendency of the appeal and, thus, he asserts, the wife’s taking of those joint funds “offset his alimony obligation” and, therefore, should serve to prevent a finding of contempt despite his admitted failure to pay alimony. In this case, the trial court considered extensive testimony and arguments of counsel regarding what funds the wife had removed from the parties’ joint accounts, on what dates the wife had removed those funds, and what funds the wife had been awarded pursuant to the trial court’s judgments before concluding that, even under the reduced monthly periodic-alimony award of $1,310.50, the husband was in arrears as to his alimony obligation in the amount of $1,258.82. In making its calculations, the trial.court did offset the husband’s alimony arrearage by the amount of certain funds the wife had removed from the parties’ accounts. The husband does not contest the amount of the arrearage or the trial court’s finding that he was in arrears on appeal.
We cannot agree that the husband was not in contempt for failing to pay the wife the $2,500 per month in alimony he owed under the November 19, 2010, judgment because the record indicates that the wife was compelled to garnish funds and remove funds from the parties’ joint accounts to fund her living expenses. We are not persuaded by the husband’s argument that the wife’s actions taken in response to his contemptuous failure to pay alimony should excuse him from being found in contempt. Moreover, the trial court stated on the record that it found the husband’s actions in failing to pay the wife any amount of alimony during the pen-dency of the appeal to be both contemptuous and “almost unconscionable.” Thus, the husband’s argument that the wife’s taking and garnishment of joint funds absolved his willful failure to pay her alimony lacks merit or support in law.
Accordingly, we cannot conclude that the trial court exceeded its discretion by determining that the husband had willfully failed or refused to pay the wife alimony during the pendency of the appeal as ordered in the trial court’s November 19, 2010, judgment. The husband testified that he had not paid any amount of alimony because, he said, he did not think that *629 the trial court’s November 19, 2010, order was legal. Moreover, although the husband had requested that the trial court set a supersedeas bond and the trial court denied that request, the husband did not appeal the denial of that request to this court or request that this court set a su-persedeas bond pursuant to Rule 8, Ala. R.App. P. Thus, the husband was obligated to pay the wife alimony as ordered under the November 19, 2010, judgment during the pendency of that appeal. Therefore, the ore tenus evidence supports the trial court’s conclusion that the husband had willfully failed to pay the wife alimony as ordered in the trial court’s November 19, 2010, judgment during the pendency of the appeal in Kreitzberg.[8]
Finally, the husband argues that the trial court erred in awarding the wife an $8,500 attorney fee. He contends that the trial court’s attorney-fee award was in error because, he says, “the amount ordered as attorneys fees was inequitable and improper under the principles of Peebles v. Miley, 439 So.2d 137 (Ala.1983).”
Pursuant to § 30-2-54, Ala. Code 1975,[9] the trial court has authority to award attorney fees in contempt actions brought to recover unpaid alimony. It is well settled that
“[w]hether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’ Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App.1986).”
Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996). Therefore, we must determine whether the trial court exceeded its discretion in awarding an $8,500 attorney fee to the wife according to the factors outlined above. In this case, the trial *630 court found the husband to be in contempt of its November 19, 2010, judgment, and the trial court also stated on the record that it found the husband’s conduct to be “almost unconscionable.” Additionally, the wife testified that she had incurred $8,500 in attorney fees at the time of the October 28, 2011, hearing. Furthermore, the wife filed an attorney-fee affidavit with the trial court that stated the wife had incurred $11,700 in attorney fees from the commencement of drafting the contempt petition in December 2010 through the end of postjudgment hearings in May 2012, along with a detailed itemization of the expenses. Accordingly, we cannot conclude that the trial court exceeded its discretion in awarding the wife an attorney-fee award in the amount of $8,500.

Conclusion

For the reasons stated above, we affirm the judgments of the trial court.
2110920 — APPLICATION OVERRULED; OPINION OF MARCH 1, 2013, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
2111066 — APPLICATION OVERRULED; OPINION OF MARCH 1, 2013, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and PITTMAN and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. We note that the trial court’s November 19, 2010, judgment ordered the husband to pay the wife $757.69 in order to equalize the parties’ IRAs. This provision was incorporated into the March 1, 2012, judgment, and, thus, the record indicates that both the husband and the wife had an IRA with an approximate value of $36,000.

. The trial court’s November 19, 2010, judgment contained a finding that the marital residence had a value of $247,000. The trial court's March 1, 2012, judgment incorporated that finding.

. This amount does not include the husband’s separate estate valued at approximately $1,000,000.

. The husband’s net award was computed using the values of the parties’ marital assets as determined by the trial court in Kreitzberg, 80 So.3d 925, as follows: IRA of $36,000 + the scooter to which no value was given + the rowboat worth approximately $1,000 + the 1978 Catalina sailboat worth approximately $3,000 + half of the funds in the parties' joint money-market account at the time of the trial, which was $105,000 + half of the funds in the parties' joint-checking account at the time of trial, which was $650 + the marital residence determined to have a value of $247,000 — the portion of the wife’s equity in the marital residence in the amount of $160,550 = the husband's net award of approximately $232,100.

. As the trial court's November 19, 2010, judgment notes, the wife was awarded additional sums as compensation for her half of moneys that the husband had removed from the parties’ joint accounts. Those sums are not contained in the wife’s total award because both the husband and the wife received equal amounts of those moneys.

. The wife’s net award was computed using the values of the parties’ marital assets as determined by the trial court in Kreitzberg, 80 So.3d 925, as follows: IRA of $36,000 + the Saturn automobile to which no value was given + half of the funds in the parties' joint money-market account at the time of the trial, which was $105,000 + half of the funds in the parties’ joint-checking account at the time of trial, which was $650 + the portion of the wife's equity in the marital residence in the amount of $160,550 + $84,000 award = the wife's net award of approximately $386,200.

. In its June 13, 2011, order, the trial court noted that, although it had denied the wife’s *625 motion to dismiss the husband’s counterclaim, it had moved the husband’s counterclaim to the administrative docket because it ”lack[ed] jurisdiction to rule on a modification of the previous order while the order is on appeal.”

. We note that, although the trial court’s June 13, 2011, order stated that it had moved the husband’s counterclaim seeking a modification of his alimony award to the administrative docket due to the trial court's lack of jurisdiction over the counterclaim at that time (see note 7, supra), the trial court considered the husband’s counterclaim at the May 14, 2012, hearing because the trial court had been reinvested with jurisdiction over the action due to this court’s issuance of its certificate of judgment in Kreitzberg on September 21, 2011. On remand, the trial court reduced the husband's alimony award, and, thus, the trial court’s judgment is effectively a final judgment adjudicating all claims between the parties in the underlying contempt action. See, e.g., Faulk v. Rhodes, 43 So.3d 624, 625 (Ala.Civ.App.2010) ("A judgment is generally not final unless all claims, or the rights or liabilities of all parties, have been decided.”); and Kelley v. U.S.A. Oil Corp., 363 So.2d 758, 759 (Ala.1978) ("To support an appeal, the order appealed from must be a final judgment.”).

. Section 30-2-54 provides:
"In all actions for divorce or for the recovery of alimony, maintenance, or support in which a judgment of divorce has been issued or is pending and a contempt of court citation has been made by the court against either party, the court may, of its discretion, upon application therefor, award a reasonable sum as fees or compensation of the attorney or attorneys representing both parties.”